Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

Edward J. Tredinnick (SBN 84033)
Keith Owens (SBN 184841)
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, CA  94104-2670
Telephone:     415.364.5540
Facsimile:     415.391.4436
Email:  etredinnick@foxrothschild.com
        kowens@foxrothschild.com

*Proposed Counsel for D & D Venture Group, Inc.*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>D & D VENTURE GROUP, INC.,<br><br>Debtor | Case No. 26-30496 (WJL)<br><br>Chapter 11 (Subchapter V)<br><br>**OMNIBUS DECLARATION OF DAMON PHAM IN SUPPORT OF VOLUNTARY PETITION AND FIRST DAY MOTIONS**<br><br><u>Hearing</u><br><br>Date:     To be Determined<br>Time:     To be Determined<br>Location:  United States Bankruptcy Court<br>             Courtroom ____<br>             450 Golden Gate Avenue<br>             San Francisco, CA 94102<br><br>             *Also via Zoom*<br><br>Judge:  Hon. William J. Lafferty |

I, Damon Pham, due hereby declare:

1.      I am the Secretary and Chief Financial Officer of D & D Venture Group, Inc., the Debtor and Debtor-in-possession (the "Debtor")  in the above captioned Chapter 11, subchapter V case (the "<u>Subchapter V Case</u>"), and have been designated by the Debtor to be the responsible individual for purposes of its Subchapter V Case.

- 1 -

2. As the Debtor's Secretary and Chief Financial Officer, I am fully familiar with the Debtor's business operations, assets, liabilities and business records. I am familiar with the manner in which the Debtor creates and maintains its books and records, including the documents attached hereto as Exhibits A through E (collectively, the "Business Records"). I have personal knowledge of the facts set forth in this declaration. I am a custodian of the Business Records or am otherwise qualified to testify regarding the creation, maintenance, and custody of the Business Records. I make this declaration based upon my personal knowledge and upon my review of the Business Records maintained by the Debtor in the ordinary course of its business.

3. I submit this Declaration in support of the Debtor's voluntary petition and first day motions (the "First Day Motions") filed in this Subchapter V Case. This Declaration is intended to provide the Court and parties-in-interest with an overview of the Debtor's business operations and the circumstances that precipitated the filing of the Subchapter V Case, as well as to support the factual basis for the First Day Motions. The First Day Motions are necessary to facilitate an orderly and effective transition into Chapter 11 while minimizing disruption to the Debtor's business operations. The Debtor intends to operate its business and manage its affairs as a debtor-in-possession pursuant to Section 1184 of the Bankruptcy Code. I have reviewed each of the First Day Motions, and I believe that the Debtor would suffer immediate and irreparable harm absent the ability to obtain the relief requested in the First Day Motions.

4. Unless otherwise stated, all facts set forth herein are based on my personal knowledge, my review of relevant Business Records of the Debtor, information provided to me by the Debtors, employees and professionals, or my experience and knowledge with respect to the operations and financial affairs of the Debtor. If I were called upon as a witness, I would testify competently to the facts set forth in this Declaration.

5. To familiarize the Court and parties-in-interest with the Debtor's business, the relief sought in the First Day Motions, and the Debtor's need for relief through Subchapter V of Chapter 11 of the Bankruptcy Code, this Declaration is organized in the following sections:

a. Part I provides an overview of the Debtor's business, including its history, corporate structure, and business operations.

- 2 -

b. Part II discusses the Debtor's Structure, including its assets and liabilities.

c. Part III addresses the events precipitating the Subchapter V Case and the Debtor's goals for the Subchapter V Case.

d. Part IV provides an overview of the relief requested in the First Day Motions and the basis for such relief.

## I. THE DEBTOR'S HISTORY AND BACKGROUND

6. The Debtor is a California corporation that was formed in 2005 by myself and my partner, David Harrison. Mr. Harrison and I formed the Debtor to own and operate several hardware stores as franchisees under the Ace Hardware™ brand. Currently, the Debtor operates three Ace Hardware-branded stores in San Rafael, Santa Rosa and Pacifica, California. Each of the stores operates as an Ace Hardware location with Ace Hardware-branded inventory under a franchise agreement with the Ace Hardware Corporation. In addition, each location has a nursery, and two of the locations (Santa Rosa and San Rafael) include a gift shop. In addition to the three retail locations, the Debtor leases a warehouse and storage facility located in Hercules, California.

7. The Debtor's principal place of business is located at 329 North Almenar Drive, Greenbrae, California 94904. This address is also my residence owned by Mr. Harrison and me, and is the location for the Debtor's Business Records.

8. The Debtor's shareholders are Mr. Harrison and myself. [1] In addition, we are the sole directors and officers of the corporation. Mr. Harrison serves as the Debtor's Chief Executive Officer while I serve as the Secretary and Chief Financial Officer.

9. As of the Petition Date, the Debtor employed approximately 70 employees, including myself and Mr. Harrison (collectively the "Employees"). Specifically, the Debtor currently employs 36 full-time Employees, and 44 part-time Employees. The Debtor pays its Employees in arrears in the ordinary course on a semi-monthly basis. The Debtor's total payroll per pay period is approximately $106,500.

10. The Debtor maintains various insurance policies through several different insurance carriers in connection with its business. Collectively, these policies provide coverage (as renewed,

---

[1] There is one additional minority shareholder, Benjamin Palmer.

Case: 26-30496   Doc# 8   Filed: 06/05/26   Entered: 06/05/26 00:35:12   Page 3 of 36
185036206

amended, modified, endorsed, and/or supplemented from time to time) for, among other things: (a) general liability, (b) automobile, (c) workers' compensation, (d) group health, and (e) dental (collectively, the "Insurance Policies").

## II. PRE-PETITION CAPITAL STRUCTURE

11. As of the Petition Date, and based in part on the Debtor's most recent unaudited balance sheet through April 30, 2026, the Debtor has total assets with a book value of approximately $2,980,083.62 and total liabilities of approximately $2,859,699.16, inclusive of disputed, unliquidated, and contingent claims. A copy of the most recent unaudited balance sheet for the Debtor is attached hereto as **Exhibit A** and incorporated herein by this reference. The Debtor's assets primarily consist of: (i) inventory of its hardware, nursery, and gift shops, (ii) various vehicles, (iii) accounts receivable and cash proceeds,(iv) leasehold interests, and (v) miscellaneous assets, including office furniture and equipment. The Debtor does not own any real property.

12. The Debtor is currently a lessee in five non-residential real estate leases for its three retail locations and the warehouse facility. As of the Petition Date, the Debtor was current on rent payments on these leases. The Debtor intends to assume these leases and continue its operations in these locations. Prior to the Petition Date, the Debtor and/or its affiliate DD Hardware LLC operated three additional stores in Santa Rosa, Sunnyvale and Richmond, California. As part of an out-of-court restructuring plan, the Debtor closed these unprofitable stores prior to the Petition Date. The Debtor and/or its affiliate have vacated the premises and returned the keys to the landlords for the vacated locations.[2]

13. Similarly, although the Debtor is operating under a payment plan for the ongoing purchase of branded inventory from Ace Hardware, the Debtor believes that it is current on all of its obligations under the franchise agreements with Ace Hardware Corporation. The Debtor intends to continue to operate the three retail locations as Ace Hardware-branded stores pursuant to the franchise agreements and will request Ace Hardware's consent to assumption of the franchise agreements in accordance with Section 365 of the Bankruptcy Code.

---

[2] DD Hardware LLC is no longer in operation and has no assets.

185036206

14. The Debtor has a line of credit with Summit State Bank (the "Summit Bank Loan") pursuant to a promissory note, loan agreement, security agreement and other documents. The Summit Bank Loan is secured by a first priority security interest in substantially all of the Debtor's assets. As of the Petition Date, the balance due to Summit Bank under the Summit Bank Loan, inclusive of principal and interest, is approximately $570,000, plus additional fees, costs and expenses that may be due. The Summit Bank Loan is in default due to the Debtor's missed payment on January 20, 2026, and subsequent payments thereafter.

15. In July 2022, the Debtor executed a guaranty of loan authorization and agreement with Fremont Bank for a loan in the principal amount of $1,200,000 (the "Fremont Bank Loan"). This loan is guaranteed by the U.S. Small Business Administration (the "SBA"). This loan was made to the Debtor's wholly owned subsidiary, DD Hardware LLC, which operated an Ace Hardware retail store in Sunnyvale, California. As described below in section III, that location has been closed and DD Hardware no longer has any operations. The Debtor is informed and believes that the current amount owing on the Fremont Bank Loan is $1,059,181.75. Because the Debtor guaranteed the Fremont Bank Loan, the Debtor's liability to Fremont Bank is contingent and unliquidated. In addition, Mr. Harrison and I personally guaranteed the Fremont Bank Loan which guarantee is secured by a Deed of Trust on our residence at 329 North Almenar Drive, Greenbrae, California.

16. Earlier this year Fremont commenced a judicial and a non-judicial foreclosure of the Deed of Trust. On May 8, 2026, Mr. Harrison and I entered into a sale agreement for the Almenar property in order to satisfy the Fremont Bank Loan guaranty, which sale is anticipated to close in early June. The proceeds of sale of the Almenar property will be used to fully satisfy the Fremont Bank Loan as well as the contingent liability of the Debtor for the Fremont Bank Loan.

17. In July 2022, the Debtor also executed a loan authorization and agreement with Bankers Health Group, LLC ("BHG") for a loan in the principal amount of $269,400. This loan is unsecured. In May of 2023, the Debtor executed a second loan authorization and agreement with BHG for $68,545. Pursuant to the loan documents, this second loan is purportedly secured by all of the Debtor's assets (collectively the "BHG Loans"). Each of the BHG Loans were guaranteed

- 5 -

by Mr. Harrison. As of the Petition Date, the balance due on the first BGH Loan is approximately $166,815.40, and the balance due on the second BGH Loan is approximately $47,549.79, excluding additional fees, costs and expenses that may be asserted by BHG. The BHG Loans are in default with the Debtor having failed to make interest payments in October 2025 and thereafter.

18. In January 2024, the Debtor executed an authorization and agreement with Celtic Bank and serviced by ODK Capital, LLC for a $100,000 line of credit (collectively the "OnDeck Loan"). This loan is unsecured. I executed a personal guarantee for the OnDeck Loan. As of the Petition Date, the balance due to OnDeck is approximately $119,103.06, plus additional fees, costs and expenses that may be due. The loan is in default with the Debtor having missed an interest payment on October 2025 and thereafter.

19. In addition to the Summit Bank Loan, the Fremont Bank Loan contingent guarantee claim, and the other loans described herein, the Debtor has unsecured liabilities related to trade debt and operational-related expenses, including unpaid payroll taxes and sales taxes, which total approximately $5,660,808.57 (including contingent, unliquidated and disputed claims as well and insider claims). However, the total debt excluding contingent and unliquidated claims, and the claims of insiders, is approximately $3,244,344.63.

20. Based on the Debtor's most recent unaudited records, the Debtor's net income for January 1 through April 30, 2026 was $8,591.36. A copy of the Debtor's Profit and Loss Statement for January 1 through April 30, 2026 is attached hereto as **Exhibit B**. It should be noted that traditionally January through March are generally the slowest months of the year for the Debtor. This is due to the fact that the Debtor's business is highly seasonal and the post-holiday winter months are generally very slow. Typically, the Debtor's business starts to pick up in April. This year, the Debtor had a very strong March because of the unusually warm weather and, consequently, April was not as strong because of the earlier start of Spring.

21. As of the Petition Date, the Debtor maintains multiple bank accounts at Summit Bank, JP Morgan Chase Bank, Fremont Bank and Capital One Bank through which the Debtor conducts its day-to-day business operations. The Debtor intends to designate these accounts as "Debtor-In-Possession" accounts, and once its inventory of checks, statements and other business

- 6 -

forms is depleted, the Debtor shall cause all checks, statements and other forms associated with the accounts and the business to bear the notation "Debtor-In-Possession". I understand that all of the banks listed above are designated as authorized depositories by the United States Trustee for Region 17 and are insured by the Federal Deposit Insurance Corporation ("FDIC").

## III.   EVENTS PRECIPITATING FILING AND GOALS IN CHAPTER 11

22.     In 2021, the Debtor's wholly owned affiliate DD Hardware LLC signed a lease to open a new retail Ace Hardware store location in Sunnyvale, California. That same year, the Debtor also signed a new lease to expand its store in Santa Rosa, California. Due to the enormous spike in demand for construction needs brought upon by a series of devasting annual wildfires in Northern California, as well as prolonged permit delays brought upon by many city governments outsourcing their planning departments to third party firms during Covid brought upon by staff resignations and retirements, both of these planned expansions ran significantly behind their planned opening timelines. This resulted in incurring rent payments for a prolonged period without any offsetting sales from operations. For Sunnyvale, the added cost for the delay was $239,199.69. For Santa Rosa, the delay caused an additional $190,322.62 in rental costs.

23.     After opening the Sunnyvale store, the actual performance of the store significantly underperformed the estimated sales projected. Based on competitive and demographic market data, Ace Corporation projected the store would generate $2.6 million in the first twelve (12) full months of operation. Unfortunately, the store never achieved the projected sale momentum. In its best full year, the store only achieved 48% of the first-year projected sales and never operated profitably. Regrettably, the Debtor used free cash flow to sustain the operations of the new location. The Debtor also reduced labor costs and inventory purchases to increase free cash flow. The reduced free cash flow negatively impacted the ability of existing stores to operate normally and lowered the ability of the stores to provide normal customer service and inventory levels to maximize sale opportunities. The result was that the Debtor's consolidated business began operating at a loss starting in 2022 due to decreased sales and the simultaneous increase in expenses for the Sunnyvale store location and the warehouse facility.

185036206

24. After completing its funding commitment for the Sunnyvale location, Fremont Bank withdrew its approval to finance the Santa Rosa expansion. As a result, the Debtor was left in the precarious financial situation of sustaining its ongoing operations while also undertaking the committed store expansions. Accordingly, the Debtor drew down its full line of credit ($600,000) at Summit State Bank. Additionally, Mr. Harrison and I liquidated our respective retirement accounts in the total amount of $630,500 which we invested into the business. In March 2022, the Debtor also sold an interest in the business to an outsider, Benjamin Palmer for $200,000. Mr. Harrison and I also took personal loans from family members, friends and personal finance companies (collectively the "Personal Loans"). These loans are unsecured. The total of the Personal Loans borrowed and transferred to the business was approximately $520,000.

25. Although the Debtor suffered a decline in profitability, the Debtor remained optimistic that it could return to profitability if it could get through this rough patch. Unfortunately, the Debtor no longer qualified for traditional bank financing. Due to the Debtor's continued need for additional cash to fund operations, the Debtor turned to secondary bridge financing companies that provided unsecured loans at very high interest rates. The Debtor executed the BHG Loans in the amount of $337,945 at an annual interest rate of 13.49%, National Funding in the amount of $300,000 at an annual interest rate of 28%, and OnDeck Loan in the amount of $100,000 at an annual interest rate of 54.90%. The cumulative monthly debt service owed for these bridge loans was $49,261.27. The high cost of these loans had a negative impact on the Debtor's available free cash flow. Interest payments on these high-cost loans created a constant need for additional funding to operate the business, but the Debtor could not generate enough revenue to cover its operating costs while also maintaining its debt service obligations. In addition, the payment of the operating costs and debt service resulted in the Debtor becoming significantly in arrears on various trust fund obligations including state sales taxes and federal and state payroll taxes. For example, in March 2026, the California Department of Tax and Fee Administration ("CDTFA") notified the Debtor that it intended to levy on the Debtor's bank accounts unless very large payments were made on account of unpaid sales taxes. While the Debtor entered into a payment plan with the CDTFA and made some payments, it was unable to make the additional payments. As a result, the CDTFA

- 8 -

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

notified me that they would serve a notice of levy on the Debtor's bank account on or about June 8, 2026, which necessitated the commencement of this Subchapter V Case. The Debtor fully intends to pay the taxing authorities pursuant to a Subchapter V Plan of Reorganization in accordance with the Bankruptcy Code provisions for the payment of taxes.

26.     In a concerted effort to bring an end to the endless borrowing cycle and return to profitability, the Debtor undertook an aggressive plan to close unprofitable stores and reduce its expenses in an effort to streamline operations. Towards that end, in August 2025, DD Hardware LLC shuttered and vacated the store in Sunnyvale, California. The Debtor is a guarantor of that lease on that location. In November 2025, the Debtor vacated its warehouse facility in Richmond, California. And in April 2026, the Debtor shuttered and vacated its stand-alone plant nursery in Santa Rosa, California.

27.     The Debtor intends to file a Subchapter V Plan of Reorganization in this case that will provide for the Debtor to continue operations of the three profitable retail stores and pay its priority and secured creditors in full from disposable income and hopes to make a distribution to unsecured creditors over the term of the Plan.

28.     Attached hereto as **Exhibit C** is a projection showing the Debtor's proposed 4-week budget for June 2026 covering the period for the emergency First Day Motions. I project that the Debtor will be able to be cash-flow positive through the period covered by the proposed budget.

## IV.     FIRST DAY MOTIONS

29.     To minimize the adverse effects of the commencement of this Subchapter V Case on the Debtor's ability to transition to ultimately confirm a plan of reorganization for its creditors, the Debtors filed certain First Day Motions designed to facilitate a smooth transition into Chapter 11.

30.     I have reviewed each of the First Day Motions with the Debtor's attorneys and financial advisor, and the facts stated therein are true and correct to the best of my knowledge, information and belief. I believe that the relief sought in each First Day Motion is tailored to meet the goals described above, is necessary to avoid irreparable harm, and is in the best interest of the

- 9 -

Debtor's estate and its creditors. I hereby adopt and affirm the factual representations contained in each of the First Day Motions, as if fully set forth herein.

31. I understand that Rule 6003 of the Federal Rules of Bankruptcy Procedure provides, in pertinent and part, that the Court will not consider motions to pay prepetition claims during the first 21 days following the filing of a Chapter 11 Petition, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm". Cognizant of this requirement, the Debtor has narrowly tailored its request for immediate authority to instances where failure to pay such claims would cause irreparable harm to itself, its creditors and the estate.

32. Accordingly, the Debtor requests that the relief sought in each of the First Day Motions described below be granted, as each request for relief constitutes a critical element in preserving the value of the Debtor's estate for the benefit of all parties-in-interest.

A. **Motion Authorizing (i) the Continued Use of Cash Management System; (ii) Authorizing the Continued Use of Existing Bank Accounts; and (iii)Granting Related Relief (the "Cash Management Motion")**

33. The Debtor maintains a cash management system as part of the ordinary course of its business that allows Debtor to efficiently collect, transfer, and disburse funds related to its business. The Debtor also uses Business Forms (defined below) which may reference Debtor's Bank Accounts (defined below). To continue operating its business operations post-petition, the Debtor needs continuity of its Bank Accounts and Business Forms. Therefore, the maintenance of Debtor's current cash management system as part of the ordinary course of its business is critical to its operational efficiency. Post-petition, the Debtor proposes to retain its current cash management system, and its prepetition Bank Accounts and Business Forms (collectively, the "Cash Management System") to minimize the disruption that would be caused by closing the Bank Accounts and printing new Business Forms.

34. In connection with the Cash Management System, and as of the Petition Date, the Debtor maintains twenty-two (22) bank accounts, including: three (3) payroll accounts (the "Payroll Accounts"), four (4) accounts payable accounts (the "AP Accounts"), seven (7) cash deposit accounts (the "Cash Deposit Accounts"), and six (6) credit card deposit accounts (the "Credit Card Deposit Accounts", and, together with the Payroll Accounts, the Cash Deposit Accounts and the

- 10 -

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

Credit Card Deposit Accounts the "<u>Bank Accounts</u>"). The Debtor owns and maintains its Bank Accounts, and funds are routinely transferred between the Bank Accounts in the ordinary course of business. The Debtor does not own or maintain any other bank accounts.

35. In general, the Debtor maintains a Payroll, Cash Deposit Account, AP Account and Credit Card Deposit Account for each store location. The Debtor also maintains separate accounts designated below as "Sprig" which are associated with its online storefront. Shortly after the Petition Date, the Debtor intends to close the banks accounts at the stores that have been closed, as designated below with an asterisk. As of the Petition Date, Debtor maintained the following Bank Accounts:

| Account Nos. (last 4 digits) | Type | Bank | Purpose |
|---|---|---|---|
| 0551 | Corporate | JP Morgan Chase | Payroll |
| 0569 | Sprig-Online Sales | JP Morgan Chase | Credit Card Deposit |
| 0577 | Pacifica | JP Morgan Chase | Credit Card Deposit |
| 0585 | San Rafael | JP Morgan Chase | Credit Card Deposits |
| 0593 | Santa Rosa | JP Morgan Chase | Credit Card Deposits |
| 8766 | Bennett Valley Gardens | JP Morgan Chase | Credit Card Deposits |
| 9021 | Sunnyvale | JP Morgan Chase | Credit Card Deposits |
| 0276 | Corporate | Fremont Bank | Sales Tax Holding Acct. |
| 1019 | Pacifica | Fremont bank | Bill Payment |
| 7992 | San Rafael | Fremont Bank | Bill Payment |
| 8242 | Santa Rosa | Fremont Bank | Bill Payment |
| 9235 | Bennet Valley Gardens | Fremont Bank | Bill Payment |
| 2367 | Corporate | Summit State Bank | Healthcare Costs |
| 3324 | Sunnyvale | Summit State Bank | Cash Deposits |
| 3566 | Santa Rosa | Summit State Bank | Cash Deposits |
| 3886 | Sprig-Online Sales | Summit State Bank | Cash Deposits |
| 4028 | San Rafael | Summit State Bank | Cash Deposits |

Case: 26-30496   Doc# 8   Filed: 06/05/26   Entered: 06/05/26 00:35:12   Page 11 of 36
185036206

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

| 6859 | San Rafael | Summit State Bank | Cash Deposits |
|------|-----------|-------------------|---------------|
| 9886 | Clearing Account | Summit State Bank | Payroll |
| 9894 | Pacifica | Summit State Bank | Cash Deposits |
| 9902 | Bennet Valley Gardens | Summit State Bank | Cash Deposits |
| 5264 | Corporate | Capital One | Payroll |

36. Additionally, in the ordinary course of business, the Debtor uses correspondence and business forms including letterhead, purchase orders, and invoices (collectively, the "Business Forms") which may reference the Bank Accounts. Together, these comprise the Debtor's Cash Management System which assists the Debtor in managing financial inflows and outflows, reconciling payments received, and allows control of and visibility into, the disbursements made by the Debtor, including on a per store location, thereby allowing efficient monitoring of the Debtor's transactions and profitability by store location.

37. It is imperative for the Debtor to maintain its Bank Accounts, Business Forms, and Cash Management System in order to manage its payroll and operate its business in the ordinary course of that business. As a matter of convenience and internal control, it is important for the Debtor to continue to operate its business without disrupting the status quo as it navigates through the early stages of this Subchapter V Case. This is particularly necessary for its retail business, which relies in major part on the use of credit card terminals tied in with its JP Morgan Chase bank accounts listed above, which cannot easily be transferred over to new accounts in the short term. Accordingly, the Debtor proposes to maintain its existing Bank Accounts post-petition. The Bank Accounts are maintained at FDIC-insured financial institutions and are essential for the Debtor's continued use of the Cash Management System. As FDIC-insured financial institutions, all of which are depositories authorized by the United States Trustee, there is virtually no risk of loss by maintaining the Bank Accounts.

38. Additionally, to minimize expenses to its estate and avoid confusion on the part of employees, customers, and vendors, the Debtor respectfully requests that the Court authorize the Debtor to continue to use all Business Forms as such forms were in existence immediately before

- 12 -

185036206

the Petition Date, with a stamped or written notation of "Debtor-In-Possession, Case No. 26-_____" on all checks; provided however, that upon depletion of the Debtor's Business Forms stock, the Debtor will obtain new check stock reflecting its status as a Debtor-In-Possession. With such authorization, the Debtor will be able to avoid the expense and delay of ordering entirely new Business Forms and the significant disruption to the Debtor business which such delay will cause.

39.     As part of the requested relief, the Debtor also seeks a waiver of the UST requirement that the Debtor establish a specific bank account for tax payments. I believe that the Debtor's tax obligations can be paid most efficiently pursuant to its existing cash management system (including its use of the Payment Processors to calculate and collect applicable sales taxes) and that the creation of a new debtor-in-possession account designated solely for tax obligations would be redundant, unnecessary, and inefficient.

40.     The Debtor also requests that it be authorized to honor pre-petition gift cards, which I estimate to total approximately $6,000 as of the date of the Cash Management Motion. I believe that this is essential to maintaining customer goodwill and ensuring customers' continued patronage during and following reorganization. In addition, the Debtor participates in the loyalty program, sponsored by Ace nationally, which involves all Ace-branded stores participating to increase customer retention. The liability for this is approximately $48,936 and is incurred only after the customer hits point thresholds, receives a rewards coupon and redeems it at the store. While the Debtor acknowledges that the post-petition redemption of pre-petition gift cards and the participation in the loyalty program represents a cost, this cost is relatively minimal and the value in retaining customers and fostering goodwill greatly exceeds the cost associated with the redemption of pre-petition gift cards and loyalty program.

41.     The Debtor also seeks to continue its business operations with its payment processor, "Bill" (hereinafter the "Payment Processor"). The services provided by the Payment Processor streamlines payables and seamlessly integrates with QuickBooks to keep our financial records current. The average monthly cost is $175. The standard cost per ACH payment is $0.50 per payment and $1.99 per physical check payment. Payments are drafted directly from the designated disbursement accounts for each location.

- 13 -

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

42.     The Debtor's continued use of the Payment Processors' services is critical to the Debtor's ongoing business operations and cashflow. The Debtor thus seeks a waiver of the UST requirement to close any accounts with the Payment Processor. Furthermore, the Debtor seeks authority from the Court to continue using the Payment Processors' services in the ordinary course of business, including an order authorizing the Payment Processor to deduct their regular payment processing fees in the ordinary course of business, including offsetting the funds collected on behalf of the Debtor's product sales, including any such fees on account of the pre-petition claims of the Payment Processor arising solely from the processing of payments. For the avoidance of doubt, the Payment Processor would not be allowed to deduct amounts or offset pre-petition claims arising from things other than the routine processing of payments without an order of the Court.

43.     I believe that the existing cash management system described above is efficient, effective, and essential to the Debtor's business operations. It enables the Debtor to, among other things, receive payments from its customers, make payments to vendors and service providers, pay sales taxes, and generate timely and accurate financial reports. If the Debtor's cash management system is disrupted, then the Debtor's ordinary operations and ability to restructure its affairs would be significantly hindered. I believe that the bankruptcy estate and its creditors would not receive any benefit if the Debtor was required to close its Bank Accounts and open new ones or discontinue using the Payment Processors to collect and transmit customer payments.

44.     In my opinion, in order to continue operating effectively post-petition, the Debtor requires continuity in its Bank Accounts and Cash Management System. I believe that obtaining an order approving the Cash Management Motion is critical because, absent such order, the Debtor would need to dedicate its scarce human resources to: (1) open new financial accounts; (2) inform numerous parties about the new accounts to which payments should be transmitted; (3) make arrangements to pay vendors and taxing authorities from the new accounts; (4) enter into relationships with new payment processors; (5) find new avenues through which to sell its products; and (6) inform customers about the new avenues through which they could buy the Debtor's products. This would take significant time by me, Mr. Harrison and other Employees, divert efforts from the Debtor's operations and reorganization, and result in substantial harm to the Debtor's

- 14 -

185036206

bankruptcy estate and its creditors. Such a dramatic shift would likely confuse the Debtor's numerous customers, who would not be able to buy the Debtor's products through normal channels. It would disrupt the revenue flow from online product sales and prohibit the Debtor from ensuring stable day-to-day operations, and even if the existing Payment Processors were instructed to send payments to new financial accounts, such change would likely take weeks to complete (at minimum) and be accompanied by confusion and misdirected payments. Vendors and service providers would likely delay or cease providing goods and services if the Debtor must convince them that it is continuing to operate. Finally, the cancellation of pre-petition gift cards would destroy customer goodwill and permanently damage the Debtor's reputation. I believe that these effects would be devastating to the Debtor's efforts to restructure its financial affairs.

45.     The Debtor will be better able to effectuate the reorganization it so acutely needs if the Court authorizes the Debtor to continue to utilize its cash management system without interruption during the Bankruptcy Case. The Debtor's existing Accounts and relationships with Payment Processors are of key value to all parties in interest. Preservation of the Debtor's current cash management system, subject to Court approval and the protections described in this Motion, is critical.

**B.**     **Motion (i) Authorizing Debtor to Pay and Honor Pre-Petition Employees Wages, Salaries, Benefits, Expenses And Other Obligations; and (Ii) Granting Related Relief (the "Employee Wages, Motion")**

46.     The Debtor has 70 Employees, of which there are currently 36 full-time Employees, who are compensated on a semi-monthly basis. Full time Employees are also entitled to participate in certain employee benefit plans (full-time Employees are eligible to participate in the company medical (Kaiser) and/or dental plans (Delta). The company pays 50% of employee plan costs). The Debtor's payroll is approximately $106,000 per pay period. The Debtor anticipates that the full payroll that will become due and owing on the next regularly scheduled pay date (June 10, 2026) will be attributable to pre-petition wages. In addition, a portion of the Debtor's next scheduled payroll on June 26, 2026, will consist of pre-petition payroll during the gap period from June 1, 2026 through the Petition Date..

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

47. As set forth in the Employee Wages Motion, none of the amounts to be paid for accrued pre-petition payroll will exceed $17,150.00 per employee.

48. It is the normal practice of the Debtor to provide semi-monthly payroll payments to each of its Employees for services performed, with the payroll processed through a third-party vendor, Paycom, for payment in the early morning of the first business day of the following week. For example, the Debtor's regular payroll for the pay period of May 1, 2026 through May 15, 2026 was deposited with the payroll processor on May 22, 2026, and scheduled for payment on May 26, 2026.

49. The Debtor's next scheduled payroll will come due on June 10, 2026, and will include pre-petition payroll and expenses for the period from May 16, 2026 through May 31, 2026. With respect to the June 10, 2026 payroll, compensation is comprised of the following categories and in the following amounts:

| | |
|---|---|
| Employee Compensation | $103,768.87[3] |
| Payroll Taxes | $33,154.15[4] |
| Employee Deductions | $1,797.63 |
| Reimbursable Expenses | $153.60 |
| Medical / Dental | $2,153.60 |
| Payroll Processor | $5,656.94 |
| **TOTAL** | **$146,684.79** |

50. The Debtor seeks authority to pay in full the payroll obligations (approximately $146,684.79) on an interim basis with the regular payroll cycle that will come due on June 10, 2026; provided, however, that the Debtor will defer payment of Mr. Harrison and me, as officers of the corporation, pending a final hearing on the Employee Wages Motion.

51. A breakdown of the Employee Obligations to be paid in the June 10 payroll is provided as **Exhibit D** attached hereto. The spreadsheet identifies Employees by initials only to avoid disclosing Employees' personally identifiable information. Furthermore, the spreadsheet contains information regarding each Employee's gross and net pay, deductions, and the Debtor's taxes and benefits contributions for each Employee.

---

[3] This amount includes pre-petition wages for me and Mr. Harrison, which amounts fall below the priority cap set forth in § 507(a)(4). Both Mr. Harrison and I have agreed to defer payment of our wages until a final hearing on the Motion.

[4] This amount includes both employee and employer related taxes.

Case: 26-30496    Doc# 8    Filed: 06/05/26    Entered: 06/05/26 00:35:12    Page 16 of 36
185036206

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

52. The Debtor will have additional pre-petition payroll for the stub period from June 1, 2026 through the Petition Date that will be payable on June 26, 2026. The Debtor is seeking authority to pay that portion of the pre-petition payroll as well. The amount of the pre-petition payroll payable on June 26, 2026 is estimated at $40,000.

53. In the absence of a court order granting the relief requested herein, the Debtor may be prohibited from delivering payments or other medical and dental benefits to the employees (collectively, the foregoing enumerated items are the "Employee Obligations"), and the checks, wire transfers and direct deposit transfers issued with respect to the pre-petition employee obligations may be dishonored. If the relief requested herein is not granted, the Debtor will suffer irreparable harm and the Debtor's Employees may suffer great hardship and, in many instances, financial difficulties, given that these monies are needed to enable them to meet their own personal obligations. To maintain Employee morale and to minimize personnel attrition due to any hardship the Debtor's Employees and their dependents may experience if the Employee Obligations are not paid when due, the Debtor seeks authority to honor and pay, in its discretion, the Employee Obligations; provided, however, that the Debtor will not pay in excess of the $17,150 per employee priority cap set forth in 11 U.S.C. § 507(a)(4) for employee wages earned prior to the Petition Date.

54. Additionally, the Debtor's Employees are vital to Debtor's continuing operations and the ultimate ability of the Debtor to confirm a plan in this Subchapter V Case. The Debtor is reliant on its Employees' skills, knowledge and understanding of the Debtor's business and familiarity of its operations to sustain the Debtor during this critical time. The work performed by the Debtor's Employees requires certain acquired skills and familiarity with the operation of the Debtor's business. Therefore, the Debtor believes it is in the best interest of the estate to continue to utilize those Employees who are the most equipped to perform for the Debtor during the course of the Debtor's Subchapter V Case. The Debtor believes that by insuring it can continue the Employee Obligations, such action will eliminate, or at least minimize, employee turnover during this critical time in the Debtor's operations.

55. If the Debtor suffers a decline in its workforce, which is likely if the Debtor is not authorized to provide the relief sought in the Employee Wages Motion, it will cause irreparable

Case: 26-30496    Doc# 8    Filed: 06/05/26    Entered: 06/05/26 00:35:12    Page 17 of 36
185036206

harm and have a deleterious impact on the Debtor's estate and its creditors. The Debtor simply cannot afford a reduction to its Employee base, or to incur the time and expense of hiring new employees. Accordingly, the Debtor requests authorization to honor and pay, in its discretion, the Employee Obligations, without interruption, to encourage the Employees to remain employed while the Debtor proceeds in bankruptcy.

        **C.**     **Motion for Entry of Interim and Final Orders (Authorizing Use of Cash Collateral and (Affording Adequate Protection and Scheduling a Final Hearing) (the "Cash Collateral Motion")**

56.     Prior to the filing of this bankruptcy case, in the ordinary course of business, the Debtor utilized revenues from its business operations as its source of working capital. As set forth in the Cash Collateral Motion, the Debtor seeks authority to continue using cash collateral to fund its operations and preserve the going concern value of its business.

57.     In particular, the Debtor proposes to use cash collateral for the purposes, and in the amounts, provided in the proposed interim 4-week budget attached hereto Exhibit C which sets forth the Debtor's proposed budget for the first 4 weeks of the Subchapter V Case (the "Budget").The Debtor will provide a more extensive budget for the balance of the Subchapter V Case at the final hearing on the Cash Collateral Motion.

58.     The Debtor proposes to use cash collateral for the purposes, and in the amounts, provided in the Budget with a variance of up to twenty percent (20%) per month. Unused portions of the Budget shall rollover to increase the following month's budget without including the aforesaid variance. Although the Budget is broken down by category and week, the Debtor seeks authority to use cash collateral up to the total of all expenses shown per month regardless of category.

59.     The Budget includes expenses that are critical to the Debtor's operation, such as payroll, utilities and other vital expenses such as purchases of inventory. Failure to pay, or delay in paying such expenses would prevent the Debtor from operating and cause it to shut down.

60.     As of the date of this Motion, the following parties assert liens or encumbrances against the personal property of the debtor:

185036206

| Lienholder | Estimated Claim Amount | Priority |
|---|---|---|
| Summit State Bank | $570,000.00 | First |
| Fremont Bank[5] | $1,059,181.75 | Second |
| Bankers Healthcare Group, LLC[6] | $337,945.00 | Third |
| State of California Department of Tax and Fee Administration[7] | $206,441.52 | Fourth |
| **TOTAL:** | **$2,173,568.27** | |

61. As set forth in the Motion, the Debtor proposes to provide to the secured creditors a replacement lien in the Debtor's post-petition inventory, supplies, equipment and accounts receivable.

62. Additionally, with respect to Summit State Bank, the Debtor proposes monthly adequate protection payments commencing on August 1, 2026, of $5,000, which monthly amount shall increase to $10,000 on and after October 1, 2026, notwithstanding the fact that the Debtor has less flexibility given its limited financial resources.

63. With respect to Fremont Bank, Debtor proposes only replacement liens as adequate protection because the individual guarantors of Fremont Bank loan (Mr. Harrison and I) anticipate paying off the Fremont Bank loan during the pendency of this Subchapter V Case from the sale of our residence located at 329 North Almenar Drive, Greenbrae, California.

64. With respect to Banker's Health Group, LLC, Debtor proposes only replacement liens as adequate protection because the BHG loans are effectively unsecured based on where they stand in priority in the capital structure behind both Summit State Bank and Fremont Bank.

---

[5] This loan represents a contingent and unliquidated claim against the Debtor based on its guaranty of the Fremont Bank Loan to DD Hardware LLC. Although the Debtor believes that Fremont Bank is unsecured as to the Debtor, Fremont Bank claims that certain inventory transferred from a location operated by DD Hardware LLC to the one of the Debtor's facilities are subject to Fremont Bank's security interest. While the Debtor reserves all rights with respect Fremont Bank's position, the Debtor proposes to treat Fremont Bank as a secured creditor for purposes of the Cash Collateral Motion, and to grant Fremont Bank adequate protection in the form of a replacement lien on postpetition collateral to the same extent, validity and priority of Fremont Bank's security interest, if any, that existed prior to the Petition Date.

[6] The Bankers Healthcare Group, LLC claim consists of two separate loans, of which only one loan is secured which loan was in the amount of $68,545.00. Replacement liens are only being granted with respect to the secured loan.

[7] The Notices of State Tax Lien are potentially avoidable as they were filed within the last 90 days.

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**D.** **Motion for Entry of Interim and Final Orders: (i)Prohibiting Utilities From Altering, Refusing, Or Discontinuing Service; (ii) Deeming Utilities Adequately Assured Of Payment; (iii) Establishing Procedures For Determining Requests For Additional Adequate Assurance Of Payment**

65. In the ordinary course of business, the Debtor obtains electrical, garbage/waste, gas, water/sewer, telephone, internet, and similar utility products and services (collectively, the "Utility Services") through utility providers and brokers (collectively, the "Utility Providers") including without limitation those listed on **Exhibit E** to this Declaration (the "Utility Service List"). The Utility Service List identifies the average monthly invoice amount of the twelve most recently received monthly bills from each Utility Provider. As so calculated, the Debtor paid the Utility Providers an average of approximately $15,187 per month on account of Utility Services.

66. Because the Debtor operates retail services to the public at three different locations, as described above, preserving Utility Services on an uninterrupted basis is essential to the Debtor's ongoing operations, and therefore, to the success of the Subchapter V Case. Indeed, any disruption of the Utility Services, even for a brief period of time, would disrupt the Debtor's ability to operate and maintain its business as a going concern and would thereby negatively impact the Debtor's customer relationships, potential future revenues, and profits. Such a result could seriously jeopardize the Debtor's value and creditors' recoveries. It is therefore critical that Utility Services continue uninterrupted during this Chapter 11 case.

67. To provide adequate assurance of payment for future services to its Utility Providers, the Debtor will deposit $7,594 (approximately 2 weeks of average service costs) into a segregated, account for the benefit of Utility Providers on or before the date that is 20 days after the Petition Date. The proposed deposit amount is far more than the average monthly bill from any one individual Utility Provider that has been received over the past twelve months.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 4, 2026 at Greenbrae, California.

DocuSigned by:

*Damon Pham*

6F36B05E478C4AE...

Damon Pham

- 20 -

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**EXHIBIT A**

185036206

# D&D Venture Group, Inc.
## Balance Sheet
### As of Apr 30, 2026

**Accrual Basis**

|  | Total |
|---|---:|
| Assets |  |
| Current Assets |  |
| Bank Accounts |  |
| Summit Bank - 3566 (BV) | 11,360.73 |
| Summit Bank 6859 | 21,485.04 |
| Summit Bank - 4028 (SR) | 45.01 |
| Summit Bank - 9886 (Clearing) | 4,598.50 |
| Summit Bank - 9894 (Pacifica) | 18,895.56 |
| Summit Bank - 2367 (HQ) | 135.19 |
| Fremont - 9235 | 173.13 |
| Fremont - 8242 | 71.30 |
| Fremont - 7992 | 25,670.99 |
| Fremont - 1019 | -11.14 |
| Fremont - 0276 | 234.02 |
| Clearing_Transfers | 0.00 |
| Chase Corp Checking 0551 | 98.77 |
| Chase Pacifica Checking 0577 | 22,114.70 |
| Chase Chase Checking 0585 | 3,909.89 |
| Chase BVAce Checking 0593 | 12,394.13 |
| Clearing_Payroll | -17,046.98 |
| Bill.com Money Out Clearing | -66,282.54 |
| Clearing_BankChangePay | 0.00 |
| Clearing_Chase Payments | 0.00 |
| Clearing_Uncleared Payroll | 1,165.51 |
| Petty Cash_Safe Balance | 0.00 |
| Bennett Valley | 5,600.00 |
| Pacifica | 2,650.00 |
| CM | 0.00 |
| San Rafael | 11,258.00 |
| **Total for Petty Cash_Safe Balance** | **$19,508.00** |
| **Total for Bank Accounts** | **$58,519.81** |
| Other Current Assets |  |
| Employee Loan | 55,000.00 |
| Inventory Asset |  |
| Inventory - BVH | 623,327.71 |
| Inventory - Pacifica | 409,030.31 |
| Inventory - SR | 965,182.05 |
| Inventory - WH | 304,023.20 |
| **Total for Inventory Asset** | **2,301,563.27** |
| **Total for Other Current Assets** | **2,356,563.27** |
| **Total for Current Assets** | **$2,415,083.08** |
| Fixed Assets |  |
| Equipment | 198,893.05 |

# D&D Venture Group, Inc.
## Balance Sheet
### As of Apr 30, 2026

Accrual Basis

|  | Total |
|---|---|
| Fixtures | 72,515.06 |
|     Alarm System | 25,690.49 |
|     Light Fixtures | 2,640.65 |
|     Outdoor Fencing | 14,149.46 |
|     Signage | -14,341.92 |
|     Store Fixtures | 155,966.14 |
|     Store Shelving | 65,301.56 |
| **Total for 1310 Fixtures** | **$321,921.44** |
| LHI - San Rafael | 83,082.01 |
| Accumulated Depreciation | -919,160.45 |
| LHI - TENANT IMPROVEMENT | 204,212.76 |
| Software Asset | 44,485.53 |
| Vehicles | $0.00 |
|     Mercedes | 53,702.00 |
|     Toyota Tundra | 52,362.97 |
|     Transit Vans | 75,840.81 |
| **Total for Vehicles** | **$181,905.78** |
| **Total for Fixed Assets** | **$115,340.12** |
| Other Assets | |
|     Pacifica Store Advance | 19,419.03 |
|     PrePaid Fees | 10,000.00 |
|     Security Deposits | 16,746.00 |
|     Ace Stock Subscription | 384,122.94 |
|     Intangible Assets | |
|         Covenant | 20,000.00 |
|         Goodwill | 162,000.00 |
|         Goodwill-BVG | 50,000.00 |
|         Loan Fees | 16,893.00 |
|         Accum Amortization | -241,245.74 |
|     **Total for Intangible Assets** | **$7,647.26** |
|     Investment in DDVG Holdings LLC | 32,000.00 |
|     Loan to DD Hardware LLC | 509,850.00 |
| **Total for Other Assets** | **$979,785.23** |
| **Total for Assets** | **$3,510,208.43** |
| Liabilities and Equity | |
| Liabilities | |
|     Current Liabilities | |
|         Accounts Payable | |
|             Accounts Payable | 1,638,718.23 |
|         **Total for Accounts Payable** | **$1,638,718.23** |
|         **Credit Cards** | **$280,937.09** |
|         Other Current Liabilities | |
|             Clearing_ACE Invoices | -21,418.16 |

# D&D Venture Group, Inc.
## Balance Sheet
### As of Apr 30, 2026

**Accrual Basis**

|  | Total |
|---|---|
| Wage Garnishment Liability | $0.00 |
| Clearing_Sales Taxes | 402,469.21 |
| Accrued Income Tax Payable | $0.00 |
| AP Tax Adjustment | $0.00 |
| Deferred Gain | $0.00 |
| Franchise Tax Payable | $0.00 |
| Payroll Liability | 884.76 |
| Reward Cards Certificates Liability | 48,936.14 |
| Sales Tax Payable | -388,265.00 |
| Sales Tax Payment Arrangement | 43,310.74 |
| Uncleared Payroll Checks Liability | 31,287.82 |
| Uncleared Transfers Liability | -140,804.97 |
| **Total for Other Current Liabilities** | **-$23,599.46** |
| **Total for Current Liabilities** | **$1,896,055.86** |
| Long-term Liabilities |  |
| Summit Bank Loan_4706 (BV) | 523,874.07 |
| Best Egg Loan | 24,444.53 |
| BHG Loan $1,265.30 | 44,932.36 |
| BHG Loan $4,972.97 | 168,557.01 |
| BP $75K Loan 01/01/24 | 75,154.32 |
| OnDeck/Celtic Loan | 55,342.12 |
| Shareholder Loan (loan from SH) - Damon Pham | 354,491.12 |
| Shareholder Loans (loan from SH) - David Harrison | 354,491.13 |
| **Total for Long-term Liabilities** | **$1,601,286.66** |
| **Total for Liabilities** | **$3,497,342.52** |
| Equity |  |
| Capital Stock | 47,808.51 |
| **Shareholder Cont/Dist** | **-$80,362.05** |
| Opening Balance Equity | $0.00 |
| Retained Earnings | 36,828.10 |
| Net Income | 8,591.36 |
| **Total for Equity** | **$12,865.91** |
| **Total for Liabilities and Equity** | **$3,510,208.43** |

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**EXHIBIT B**

185036206

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

# D&D Venture Group, Inc.
## Profit and Loss
### January 1-April 30, 2026

| | Jan 2026 | Feb 2026 | Mar 2026 | Apr 2026 | Total |
|---|---|---|---|---|---|
| **Income** | 530,932.81 | 546,397.99 | 878,433.07 | 734,902.41 | $2,690,666.28 |
| **Cost of Goods Sold** | 232,323.10 | 246,393.58 | 379,894.78 | 315,279.04 | $1,173,890.50 |
| **Gross Profit** | 298,609.71 | 300,004.41 | 498,538.29 | 419,623.37 | $1,516,775.78 |
| Expenses | | | | | |
| Dues and Subscriptions | 211.65 | 310.50 | 641.06 | 757.82 | 1,921.03 |
| Interest Expense | 4,494.78 | 4,366.49 | 4,434.89 | 3,008.30 | 16,304.46 |
| Licenses and Permits | 731.00 | 220.00 | 273.00 | 348.00 | 1,572.00 |
| Meals 50% | 8.23 | | | | 8.23 |
| Advertising & Marketing | | 314.00 | 195.04 | 68.75 | 577.79 |
| ACE Advertising | 6,318.90 | 10,139.46 | 7,334.51 | 8,547.33 | 32,340.20 |
| Local Advertising | 3,235.00 | 2,531.00 | 2,957.00 | 426.00 | 9,149.00 |
| Print | | 120.00 | 533.11 | 2,517.59 | 3,170.70 |
| **Total for Local Advertising** | **3,235.00** | **2,651.00** | **3,490.11** | **2,943.59** | **$12,319.70** |
| Web Hosting & Registration | 118.04 | 73.49 | 189.74 | 498.00 | 879.27 |
| Charitable Contributions | 24.00 | | | | 24.00 |
| **Total for Advertising & Marketing** | **9,695.94** | **13,177.95** | **11,209.40** | **12,057.67** | **$46,140.96** |
| Automobile Expense | | | | | |
| DMV Fees | | 1,387.54 | | | 1,387.54 |
| Gas | 1,483.18 | 1,493.09 | 1,754.81 | 1,775.07 | 6,506.15 |
| Maintenance | 151.19 | 343.82 | 337.70 | 185.18 | 1,017.89 |
| Parking and Tolls | 26.90 | 877.70 | 864.94 | 863.95 | 2,633.49 |
| Rental | 162.61 | 134.27 | | 6.55 | 303.43 |
| Commuting Reimbursement | 292.88 | 382.13 | 268.88 | 229.02 | 1,172.91 |
| Insurance | 763.15 | 763.15 | 763.15 | 763.15 | 3,052.60 |
| **Total for Automobile Expense** | **2,879.91** | **5,381.70** | **3,989.48** | **3,822.92** | **$16,074.01** |
| Bank Service Charges | | | -0.01 | | -0.01 |
| Bank Fees | 1,143.18 | 1,951.91 | 973.40 | 541.00 | 4,609.49 |
| **Total for Bank Service Charges** | **1,143.18** | **1,951.91** | **973.39** | **541.00** | **$4,609.48** |
| Freight/Shipping | | | | | |
| Freight (ACE) | 5,679.62 | 5,641.86 | 7,821.67 | 7,929.64 | 27,072.79 |
| Fuel Surcharge (Ace) | 978.57 | 891.58 | 1,359.00 | 1,899.51 | 5,128.66 |
| **Total for Freight/Shipping** | **6,658.19** | **6,533.44** | **9,180.67** | **9,829.15** | **$32,201.45** |
| Insurance | | | | | |
| Dental Insurance | 779.60 | 779.60 | 779.60 | 779.60 | 3,118.40 |
| Health Insurance | 8,254.00 | 9239.68 | 9,264.68 | 9,239.68 | 35,998.04 |
| PretaxDeductions | -4,348.12 | -3,993.70 | -4,702.54 | -4,081.85 | -17,126.21 |
| **Total for 6810 Health Insurance** | **3,905.88** | **5,245.98** | **4,562.14** | **5,157.83** | **$18,871.83** |
| Liability | -2,479.00 | 15,678.00 | -19,098.00 | 11,871.00 | 5,972.00 |
| **Total for Insurance** | **2,206.48** | **21,703.58** | **-13,756.26** | **17,808.43** | **$27,962.23** |
| Merchant Fees | | | | | |
| Mastercard/Visa - Fees | 24,097.49 | 14,921.24 | 15,995.88 | 22,667.53 | 77,682.14 |
| **Total for Merchant Fees** | **24,097.49** | **14,921.24** | **15,995.88** | **22,667.53** | **$77,682.14** |
| Occupancy | | | | | |
| Rent | 63,715.16 | 63,740.16 | 69,376.52 | 67,754.66 | 264,586.50 |
| Telephone | 902.86 | 840.62 | 797.69 | 815.35 | 3,356.52 |
| Utilities | | | | | 0.00 |
| Alarm | 596.97 | 314.34 | | 389.15 | 1,300.46 |
| Garbage & Sewer | 5,175.40 | 5,214.44 | 4,656.87 | 5,157.52 | 20,204.23 |
| Gas_Electric | 11,745.33 | 12,960.64 | 1,660.27 | 19,341.07 | 45,707.31 |
| Internet | 12,047.30 | 1,384.64 | 9,665.63 | 5,323.87 | 28,421.44 |
| Water | 170.36 | | 843.83 | | 1,014.19 |

Case: 26-30496     Doc# 8     Filed: 06/05/26     Entered: 06/05/26 00:35:12     Page 26 of 36

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

# D&D Venture Group, Inc.
## Profit and Loss
### January 1-April 30, 2026

|  | Jan 2026 | Feb 2026 | Mar 2026 | Apr 2026 | Total |
|---|---|---|---|---|---|
| **Accrual Basis** Total for Utilities | 29,735.36 | 19,874.06 | 16,826.60 | 30,211.61 | $96,647.63 |
| **Total for Occupancy** | 94,353.38 | 84,454.84 | 87,000.81 | 98,781.62 | $364,590.65 |
| Office Expenses |  |  |  |  |  |
| Office Supplies | 1,936.15 | 805.31 | 2,940.81 | 1,729.77 | 7,412.04 |
| Postage and Delivery |  |  |  | 19.59 | 19.59 |
| Software and Support | 5,987.05 | 5,592.12 | 7,943.54 | 7,395.54 | 26,918.25 |
| Water | 824.23 | 160.99 | 168.69 | 824.23 | 1,978.14 |
| **Total for Office Expenses** | 8,747.43 | 6,558.42 | 11,053.04 | 9,969.13 | $36,328.02 |
| Payroll |  |  |  |  |  |
| Payroll Fees | 3,749.52 | 2,690.97 | 2,671.87 | 2,733.33 | 11,845.69 |
| Salaries & Wages | 190,841.41 | 183,823.75 | 182,936.64 | 209,928.04 | 767,529.84 |
| Taxes | 26,592.31 | 22,740.20 | 18,348.23 | 18,881.02 | 86,561.76 |
| Non payroll checks to Employees |  | 664.93 | 3,071.21 |  | 3,736.14 |
| **Total for Payroll** | 221,183.24 | 209,919.85 | 207,027.95 | 231,542.39 | $869,673.43 |
| Professional Fees |  |  |  | 7,875.00 | 7,875.00 |
| Accounting | 2,034.25 | 344.50 | 1,915.25 | 1,458.00 | 5,752.00 |
| Legal |  | 923.90 |  | 35,762.50 | 36,686.40 |
| Consultant |  | 499.00 |  |  | 499.00 |
| **Total for Professional Fees** | 2,034.25 | 1,767.40 | 1,915.25 | 45,095.50 | $50,812.40 |
| Repairs and Maintenance |  |  |  | 535.83 | 535.83 |
| Building Repairs | 3,114.82 | 1,706.86 |  | 4,241.30 | 9,062.98 |
| **Total for Repairs and Maintenance** | 3,114.82 | 1,706.86 | 0.00 | 4,777.13 | $9,598.81 |
| Store Expenses |  |  |  |  |  |
| Supplies | 515.94 | 116.43 | 104.83 | 366.81 | 1,104.01 |
| **Total for Store Expenses** | 515.94 | 116.43 | 104.83 | 366.81 | $1,104.01 |
| Taxes |  |  |  |  |  |
| Ace Product Tax (ACE) | 17.30 | 74.11 | 98.17 | 93.51 | 283.09 |
| PROPERTY TAX |  | 3,461.95 |  |  | 3,461.95 |
| **Total for Taxes** | 17.30 | 3,536.06 | 98.17 | 93.51 | $3,745.04 |
| Travel & Ent |  |  |  |  |  |
| Entertainment | 38.46 | 17.98 | 216.14 | 42.95 | 315.53 |
| Lodging | 231.97 | 2,781.91 | 2,094.40 |  | 5,108.28 |
| Meals | 2,297.63 | 2,273.21 | 2,002.83 | 1,262.35 | 7,836.02 |
| Transportation | 21.80 |  |  |  | 21.80 |
| Local Transportation | 9.99 | 9.99 | 230.88 |  | 250.86 |
| **Total for Travel & Ent** | 2,599.85 | 5,083.09 | 4,544.25 | 1,305.30 | $13,532.49 |
| **Total for Expenses** | 384,693.06 | 381,709.76 | 344,685.81 | 462,772.21 | $1,573,860.84 |
| **Net Operating Income** | -86,083.35 | -81,705.35 | 153,852.48 | -43,148.83 | -$57,085.05 |
| Other Income |  |  |  |  |  |
| ACE Dividends |  |  |  | 65,676.41 | 65,676.41 |
| **Total for Other Income** | 0.00 | 0.00 | 0.00 | 65,676.41 | $65,676.41 |
| Other Expenses |  |  |  |  |  |
| **Total for Other Expenses** | 0.00 | 0.00 | 0.00 | 0.00 | $0.00 |
| **Net Other Income** | 0.00 | 0.00 | 0.00 | 65,676.41 | $65,676.41 |
| **Net Income** | -86,083.35 | -81,705.35 | 153,852.48 | 22,527.58 | 8,591.36 |

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**EXHIBIT C**

185036206

# D and D Venture Group, Inc.
# Proposed Cash Collateral Budget

| Santa Rosa Hardware | Petition Date Jun-26 | Week of 6/1/26 | Week of 6/8/26 | Week of 6/15/26 | Week of 6/22/26 |
|---|---|---|---|---|---|
| Hardware | 230,277 | 57,569.13 | 57,569.13 | 57,569.13 | 57,569.13 |
| Nursery | 2,702 | 675.42 | 675.42 | 675.42 | 675.42 |
| Gift | 8,322 | 2,080.60 | 2,080.60 | 2,080.60 | 2,080.60 |
| Total Sales | 241,301 | 60,325 | 60,325 | 60,325 | 60,325 |
| Hardware Purchasing | 115,138 | 28,784.56 | 28,784.56 | 28,784.56 | 28,784.56 |
| Nursery Purchasing | 1,216 | 303.94 | 303.94 | 303.94 | 303.94 |
| Gift Purchasing | 3,495 | 873.85 | 873.85 | 873.85 | 873.85 |
| Cost of Goods Sold | 119,849 | 29,962.35 | 29,962.35 | 29,962.35 | 29,962.35 |
| Gross Profit | 121,451 | 30,362.79 | 30,362.79 | 30,362.79 | 30,362.79 |
| Payroll | 44,460 | | 22,229.97 | | 22,229.97 |
| Rent | 22,550 | 22,550.00 | | | |
| Utilities | 3,690 | 922.50 | 922.50 | 922.50 | 922.50 |
| Advertising | 5,430 | 1,357.50 | 1,357.50 | 1,357.50 | 1,357.50 |
| Insurance | 2,166 | 541.56 | 541.56 | 541.56 | 541.56 |
| Benefits | 1,971 | 492.83 | 492.83 | 492.83 | 492.83 |
| CC Processing | 6,033 | 1,508.13 | 1,508.13 | 1,508.13 | 1,508.13 |
| Freight | 5,483 | 1,370.69 | 1,370.69 | 1,370.69 | 1,370.69 |
| Software | 1,029 | 257.26 | 257.26 | 257.26 | 257.26 |
| Other Expenses | 122 | 30.39 | 30.39 | 30.39 | 30.39 |
| Total Operating Expenses | 92,933 | 29,031 | 28,711 | 6,481 | 28,711 |
| Net Operating Income | 28,518 | 1,332 | 1,652 | 23,882 | 1,652 |

| Pacifica | Jun-26 | | | | |
|---|---|---|---|---|---|
| Hardware | 135,562 | 33,890.54 | 33,890.54 | 33,890.54 | 33,890.54 |
| Nursery | 20,825 | 5,206.26 | 5,206.26 | 5,206.26 | 5,206.26 |
| Gift | 929 | 232.14 | 232.14 | 232.14 | 232.14 |
| Total Sales | 157,316 | 39,329 | 39,329 | 39,329 | 39,329 |
| Hardware Purchasing | 63,944 | 15,986.10 | 15,986.10 | 15,986.10 | 15,986.10 |
| Nursery Purchasing | 8,149 | 2,037.23 | 2,037.23 | 2,037.23 | 2,037.23 |
| Gift Purchasing | 371 | 92.85 | 92.85 | 92.85 | 92.85 |
| Cost of Goods Sold | 72,465 | 18,116.19 | 18,116.19 | 18,116.19 | 18,116.19 |
| Gross Profit | 84,851 | 21,213 | 21,213 | 21,213 | 21,213 |
| Payroll | 36,678 | | 18,338.96 | | 18,338.96 |
| Rent | 5,500 | 5,500.00 | | | |
| Utilities | 1,720 | 430.00 | 430.00 | 430.00 | 430.00 |
| Advertising | 4,980 | 1,245.00 | 1,245.00 | 1,245.00 | 1,245.00 |
| Insurance | 1,572 | 392.95 | 392.95 | 392.95 | 392.95 |
| Benefits | 1,559 | 389.63 | 389.63 | 389.63 | 389.63 |
| CC Processing | 3,672 | 918.01 | 918.01 | 918.01 | 918.01 |
| Freight | 3,197 | 799.31 | 799.31 | 799.31 | 799.31 |
| Software | 747 | 186.67 | 186.67 | 186.67 | 186.67 |
| Other Expenses | 815 | 203.72 | 203.72 | 203.72 | 203.72 |
| Total Operating Expenses | 60,439 | 10,065 | 22,904 | 4,565 | 22,904 |
| Net Operating Income | 24,412 | 11,147 | (1,692) | 16,647 | (1,692) |

| San Rafael | Jun-26 | | | | |
|---|---|---|---|---|---|
| Hardware | 275,788 | 68,947.01 | 68,947.01 | 68,947.01 | 68,947.01 |
| Nursery | 167,890 | 41,972.44 | 41,972.44 | 41,972.44 | 41,972.44 |
| Gift | 64,413 | 16,103.13 | 16,103.13 | 16,103.13 | 16,103.13 |
| Sales | 508,090 | 127,023 | 127,023 | 127,023 | 127,023 |
| Hardware Purchasing | 132,590 | 33,147.60 | 33,147.60 | 33,147.60 | 33,147.60 |
| Nursery Purchasing | 75,550 | 18,887.60 | 18,887.60 | 18,887.60 | 18,887.60 |
| Gift Purchasing | 27,053 | 6,763.31 | 6,763.31 | 6,763.31 | 6,763.31 |
| Cost of Goods Sold | 235,194 | 58,799 | 58,799 | 58,799 | 58,799 |
| Gross Profit | 272,896 | 68,224 | 68,224 | 68,224 | 68,224 |
| Payroll | 62,088 | | 31,044.24 | | 31,044.24 |
| Rent | 21,525 | 21,525.00 | | | |
| Utilities | 8,700 | 2,175.00 | 2,175.00 | 2,175.00 | 2,175.00 |
| Advertising | 8,790 | 2,197.50 | 2,197.50 | 2,197.50 | 2,197.50 |
| Insurance | 3,654 | 913.40 | 913.40 | 913.40 | 913.40 |
| Auto | 3,900 | 975.00 | 975.00 | 975.00 | 975.00 |
| Benefits | 2,478 | 619.43 | 619.43 | 619.43 | 619.43 |
| Merchant Discounts | 11,813 | 2,953.23 | 2,953.23 | 2,953.23 | 2,953.23 |

# D and D Venture Group, Inc.
# Proposed Cash Collateral Budget

| | | | | | |
|---|---|---|---|---|---|
| Freight | 6,630 | 1,657.38 | 1,657.38 | 1,657.38 | 1,657.38 |
| Software | 2,169 | 542.37 | 542.37 | 542.37 | 542.37 |
| Maintenance | 1,470 | 367.50 | 367.50 | 367.50 | 367.50 |
| Store Supplies | 1,140 | 285.00 | 285.00 | 285.00 | 285.00 |
| Transportation | 1,650 | 412.50 | 412.50 | 412.50 | 412.50 |
| Other Expenses | 6,570 | 1,642.40 | 1,642.40 | 1,642.40 | 1,642.40 |
| **Total Operating Expenses** | **142,576** | **36,266** | **45,785** | **14,741** | **45,785** |
| | | | | | |
| **Net Operating Income** | **130,320** | **31,958** | **22,439** | **53,483** | **22,439** |

| Warehouse/Administrative | Jun-26 | | | | |
|---|---|---|---|---|---|
| Warehouse Salaries | 13,635 | | 6,817.50 | | 6,817.50 |
| Visual Merchandising Salaries | 7,750 | | 3,875.00 | | 3,875.00 |
| Administrative Salaries | 3,575 | | 1,787.70 | | 1,787.70 |
| Manager Salaries | 44,854 | | 22,427.08 | | 22,427.08 |
| Rent | 10,250 | 10,250.00 | | | |
| Utilities | 1,500 | 375.00 | 375.00 | 375.00 | 375.00 |
| Insurance | 913 | 228.35 | 228.35 | 228.35 | 228.35 |
| Benefits | 3,856 | 963.90 | 963.90 | 963.90 | 963.90 |
| **Total Operating Expenses** | **86,334** | **11,817** | **36,475** | **1,567** | **36,475** |

| Consolidated | Jun-26 | | | | |
|---|---|---|---|---|---|
| **Hardware** | **641,627** | **160,407** | **160,407** | **160,407** | **160,407** |
| **Nursery** | **191,416** | **47,854** | **47,854** | **47,854** | **47,854** |
| **Gift** | **73,663** | **18,416** | **18,416** | **18,416** | **18,416** |
| **Total Sales** | **906,707** | **226,677** | **226,677** | **226,677** | **226,677** |
| Hardware Purchasing | 311,673 | 77,918 | 77,918 | 77,918 | 77,918 |
| Nursery Purchasing | 84,915 | 21,229 | 21,229 | 21,229 | 21,229 |
| Gift Purchasing | 30,920 | 7,730 | 7,730 | 7,730 | 7,730 |
| **Cost of Goods Sold** | **427,508** | **106,877** | **106,877** | **106,877** | **106,877** |
| | | | | | |
| **Gross Profit** | **479,198** | **119,800** | **119,800** | **119,800** | **119,800** |
| | | | | | |
| Payroll | 213,041 | - | 106,520 | - | 106,520 |
| Rent | 59,825 | 59,825 | - | - | - |
| Utilities | 15,610 | 3,903 | 3,903 | 3,903 | 3,903 |
| Advertising | 19,200 | 4,800 | 4,800 | 4,800 | 4,800 |
| Insurance | 8,305 | 2,076 | 2,076 | 2,076 | 2,076 |
| Auto | 3,900 | 975 | 975 | 975 | 975 |
| Benefits | 9,863 | 2,466 | 2,466 | 2,466 | 2,466 |
| CC Processing | 21,517 | 5,379 | 5,379 | 5,379 | 5,379 |
| Freight | 15,310 | 3,827 | 3,827 | 3,827 | 3,827 |
| Software | 3,945 | 986 | 986 | 986 | 986 |
| Maintenance | 1,470 | 368 | 368 | 368 | 368 |
| Store Supplies | 1,140 | 285 | 285 | 285 | 285 |
| Transportation | 1,650 | 413 | 413 | 413 | 413 |
| Other Expenses | 7,506 | 1,877 | 1,877 | 1,877 | 1,877 |
| **Total Operating Expenses** | **382,282** | **87,179** | **133,875** | **27,354** | **133,875** |
| | | | | | |
| **Net Operating Income** | **96,916** | **32,620** | **(14,075)** | **92,445** | **(14,075)** |
| | | | | | |
| **Ace Cash Rebate** | | | | | |
| | | | | | |
| **Net Income** | **96,916** | **32,620** | **(14,075)** | **92,445** | **(14,075)** |
| | | | | | |
| **Net Cash Flow** | **96,916** | **32,620** | **(14,075)** | **92,445** | **(14,075)** |
| Beginning Cash | 150,000 | 150,000 | 182,620 | 168,546 | 260,991 |
| **Ending Cash** | **246,916** | **182,620** | **168,546** | **260,991** | **246,916** |

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**EXHIBIT D**

| | Gross Earning | Taxes | Benefits | Net Pay | |
|---|---|---|---|---|---|
| AC | $ 2,906.24 | $ 795.14 | $ - | $ 2,111.10 | |
| AJ | $ 465.12 | $ 103.72 | $ - | $ 361.40 | |
| AC | $ 1,968.25 | $ 366.13 | $ - | $ 1,602.12 | |
| AI | $ 1,580.74 | $ 390.66 | $ 36.72 | $ 1,171.72 | |
| AP | $ 2,180.64 | $ 532.34 | $ 36.72 | $ 1,629.94 | |
| BP | $ 5,208.33 | $ 1,548.79 | $ 888.76 | $ 3,215.16 | |
| BD | $ 685.04 | $ 152.94 | $ - | $ 532.10 | |
| CG | $ 776.11 | $ 128.89 | $ - | $ 647.22 | |
| CR | $ 700.34 | $ 116.28 | $ - | $ 584.06 | |
| CW | $ 1,159.90 | $ 192.54 | $ - | $ 967.36 | |
| CH | $ 1,318.59 | $ 302.66 | $ - | $ 1,015.93 | |
| CJ | $ 1,917.00 | $ 518.25 | $ 242.88 | $ 1,277.31 | |
| CS | $ 1,146.19 | $ 260.51 | $ - | $ 885.68 | |
| DC | $ 1,659.06 | $ 339.61 | $ - | $ 1,319.45 | |
| DJ | $ 1,317.75 | $ 365.43 | $ - | $ 952.32 | |
| DC | $ 1,156.07 | $ 254.77 | $ - | $ 901.30 | |
| DC | $ 1,943.00 | $ 433.28 | $ - | $ 1,509.72 | |
| DZ | | $ 83.62 | $ - | $ 83.62 | *Terminated, payroll taxes due, employee already paid |
| ESM | $ 1,400.40 | $ 273.52 | $ - | $ 1,126.88 | |
| ED | $ 1,435.30 | $ 288.29 | $ 49.50 | $ 1,147.01 | |
| EM | $ - | $ - | $ - | $ - | |
| EE | $ 1,526.58 | $ 330.61 | $ - | $ 1,195.97 | |
| GS | $ 549.48 | $ 122.54 | $ - | $ 426.94 | |
| GM | $ 1,655.25 | $ 402.52 | $ - | $ 1,252.73 | |
| HH | | $ 265.60 | $ - | $ 265.60 | *Terminated, payroll taxes due, employee already paid |
| JP | $ 985.15 | $ 223.12 | $ - | $ 762.03 | |
| JB | $ 1,351.56 | $ 441.40 | $ - | $ 910.16 | |
| JF | $ 1,803.28 | $ 576.65 | $ - | $ 1,226.63 | |
| JP | $ 1,050.66 | $ 447.77 | $ - | $ 602.89 | |
| JV | $ 1,198.71 | $ 250.31 | $ - | $ 948.40 | |
| JD | $ 1,642.83 | $ 355.15 | $ - | $ 1,287.68 | |
| KW | $ 1,177.53 | $ 239.15 | $ - | $ 938.38 | |
| KB | $ 3,436.01 | $ 1,161.57 | $ 770.74 | $ 2,204.42 | |
| KC | $ 506.70 | $ 118.41 | $ - | $ 388.29 | |
| KL | $ 1,335.09 | $ 327.27 | $ - | $ 1,007.82 | |
| LMT | $ 624.80 | $ 139.30 | $ - | $ 485.50 | |
| LK | $ 674.00 | $ 161.83 | $ - | $ 512.17 | |

186110640.1

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

| | | | | |
|---|---|---|---|---|
| LS | $ 282.13 | $ 87.88 | $ - | $ 194.25 |
| LR | $ 1,494.87 | $ 462.92 | $ - | $ 1,031.95 |
| MS | $ 482.60 | $ 107.57 | $ - | $ 375.03 |
| MW | $ 656.37 | $ 146.36 | $ - | $ 510.01 |
| MM | $ 1,975.08 | $ 376.80 | $ - | $ 1,598.28 |
| MH | $ 2,147.45 | $ 470.31 | $ 129.34 | $ 1,612.47 |
| MM | $ 1,392.40 | $ 310.52 | $ - | $ 1,081.88 |
| MP | $ 1,971.33 | $ 467.18 | $ - | $ 1,504.15 |
| MK | $ 1,600.00 | $ 427.99 | $ - | $ 1,172.01 |
| NN | $ 455.01 | $ 0.22 | $ - | $ 454.79 |
| NC | $ 5,208.33 | $ 1,562.82 | $ 337.02 | $ 3,477.00 |
| NW | $ 1,335.42 | $ 332.88 | $ - | $ 1,002.54 |
| NS | $ 1,612.98 | $ 359.68 | $ - | $ 1,253.30 |
| PR | $ 171.90 | $ 38.36 | $ - | $ 133.54 |
| PM | $ 848.04 | $ 140.75 | $ - | $ 707.29 |
| PH | $ 610.92 | $ 136.25 | $ - | $ 474.67 |
| RB | $ 1,999.03 | $ 532.15 | $ - | $ 1,466.88 |
| RK | $ 3,184.52 | $ 888.27 | $ - | $ 2,296.25 |
| RF | $ 579.43 | $ 129.22 | $ - | $ 450.21 |
| SY | $ 2,685.35 | $ 682.96 | $ - | $ 2,002.39 |
| SA | $ 1,123.20 | $ 242.28 | $ - | $ 880.92 |
| ST | $ 235.88 | $ 52.63 | $ - | $ 183.25 |
| SJ | $ 1,337.27 | $ 240.10 | $ - | $ 1,097.17 |
| SV | $ 810.36 | $ 134.50 | $ - | $ 675.86 |
| TS | $ 1,861.20 | $ 492.84 | $ 466.28 | $ 1,135.22 |
| WN | $ 600.10 | $ 133.79 | $ - | $ 466.31 |
| YOPDM | $ 1,636.66 | $ 364.96 | $ - | $ 1,271.70 |
| | **$ 88,739.53** | **$22,332.76** | **$2,957.96** | **$65,966.33** |

2

186110640.1

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**EXHIBIT E**

185036206

Docusign Envelope ID: A38DA02A-32DC-8CA8-80A3-B57E5318CFE3

**EXHIBIT E**

**UTILITY PROVIDERS**

| Provider Name and Address | Debtor Service Address | Account No. | Monthly Cost |
|---|---|---|---|
| PG&E (Electricity) P.O. Box 997300 Sacramento, CA 95899-7300 | 2739 Yulupa Ave Santa Rosa, CA 95405 | 7086876997-0 | $2,350 |
| PG&E (Electricity) P.O. Box 997300 Sacramento, CA 95899-7300 | 1826 4th Street San Rafael, CA 94901 | 90236704475-5 | $3,800 |
| PG&E (Electricity) P.O. Box 997300 Sacramento, CA 95899-7300 | 451 Oceana Blvd Pacifica, CA 94044 | 1585252047-5 | $1,250 |
| Comcast Business (Phone/Internet) P.O. Box 60533 City Of Industry CA 91716-0533 | 2739 Yulupa Ave Santa Rosa, CA 95405 | 8155300341489400 | $350 |
| Comcast Business (Phone/Internet) P.O. Box 60533 City Of Industry CA 91716-0533 | 1846 4th Street San Rafael, CA 94901 | 8155300010929370 | $326 |
| Comcast (Phone) P.O. Box 37601 Philadelphia, PA 19101-0601 | 1846 4th Street San Rafael, CA 94901 | 906793215 | $1500 |
| Comcast Business (Phone/Internet) P.O. Box 60533 City Of Industry CA 91716-0533 | 1826 4th Street San Rafael, CA 94901 | 8155300011025730 | $625 |
| Comcast Business (Phone/Internet) P.O. Box 60533 City Of Industry CA 91716-0533 | 451 Oceana Blvd Pacifica, CA 94044 | 8155200260284200 | $315 |

185036206

| Provider Name and Address | Debtor Service Address | Account No. | Monthly Cost |
|---|---|---|---|
| Comcast Business (Phone/Internet) P.O. Box 60533 City Of Industry CA 91716-0533 | 226 Linus Pauling Drive Hercules, CA 94084 | 8155400640472740 | $650 |
| Recology Sonoma Marin (Waste) 3400 Standish Ave Santa Rosa, CA 95407 | 2739 Yulupa Ave Santa Rosa, CA 95405 | 1813083490 | $512 |
| Marin Sanitary Service (Waste) P.O. Box 11117 San Rafael, CA 94912 | 1826 4th Street San Rafael, CA 94901 | 01-70962 | $1237 |
| Republic Services (Waste) P.O. Box 78829 Phoenix, AZ 85062-8829 | 226 Linus Pauling Drive Hercules, CA 94084 | 3-0851-0041853 | $503 |
| Recology of the Coast (Waste) 2305 Palmetto Ave Pacifica, CA 94044 | 451 Oceana Blvd Pacifica, CA 94044 | 1210100529 | $569 |
| North Coast County Water District (Water) 2400 Francisco Blvd Pacifica, CA 94044 | 451 Oceana Blvd Pacifica, CA 94044 | 08-0020-01 | $150 |
| Marin Water District (Water) 220 Nellen Ave Corte Madera, CA 94925 | 1840 & 1842 4th Street San Rafael, CA 94901 | 574292 | $250 |
| Marin Water District (Water) 220 Nellen Ave Corte Madera, CA 94925 | 1826 4th Street San Rafael, CA 94901 | 514406 | $400 |
| City of Santa Rosa (Water) 100 Santa Rosa Avenue Santa Rosa, CA 95404 | 2739 Yulupa Ave Santa Rosa, CA 95405 | 040121 | $400 |
| | 2729 Yulupa Ave Santa Rosa, CA 95405 | 040120 | |
| | 2727 Yulupa Ave, Santa Rosa, CA 95405 | 040119 | |