| Fill in this information to identify the case: | |
|---|---|
| Debtor Name: | D & D VENTURE GROUP, INC. |
| United States Bankruptcy Court for the Northern District of California | |
| Case Number: | 26-30496-DM |

☒ Check if this is an amended filing

Northern District of California

# Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V

## D & D Venture Group, Inc.'s Amended Plan of Reorganization, Dated October 2, 2026

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

The Debtor is a California corporation formed in 2005 and currently operates three ACE Hardware-branded stores in San Rafael, Santa Rosa and Pacifica, California. This bankruptcy case was commenced because the Debtor's obligations were greater than its ability to pay due in large part to the Debtor's unsuccessful effort to expand its operations through a wholly-owned, non-debtor affiliate, DD Hardware LLC, which was formed in 2021 to open and operate an additional ACE Hardware Store location in Sunnyvale, California.

The Debtor guaranteed an SBA Loan that DD Hardware LLC obtained from Fremont Bank in July 2022 to fund the expansion as well as other obligations of its affiliate. The Fremont Bank Loan was also guaranteed by the Debtor's principals, Damon Pham and David Harrison, which guaranty was secured by their residence. Shortly after filing this bankruptcy case in June 2026, Messrs. Pham and Harrison sold their residence which paid off the Fremont Bank Loan.

Because the Sunnyvale store was unprofitable, the Debtor was forced to close its affiliate and liquidate the assets of DD Hardware LLC in August 2025; the Debtor continues to operate the three original locations. During this time frame, the Debtor also obtained several bridge loans with high interest rates to fund its operations. The high cost of these loans had a negative impact on the Debtor's available free cash flow. Interest payments on these high-cost loans created a constant need for additional funding to operate the business, but the Debtor could not generate sufficient revenue to cover its operating expenses while also maintaining its debt service obligations.

The Debtor's payment of operating expenses and debt service also caused the Debtor to become significantly in arrears on various trust fund obligations including state sales taxes and federal and state payroll taxes. In March 2026, the California Department of Tax and Fee Administration ("CDTFA") notified the Debtor that it intended to levy on the Debtor's bank accounts unless very large payments were made on account of unpaid sales taxes. While the Debtor entered into a payment plan with the CDTFA and made some payments, the Debtor was unable to make the additional plan payments. As a result, the CDTFA served the Debtor with a notice of levy which notified the Debtor of CDTFA's intent to levy on the Debtor's bank account on or about June 8, 2026, which necessitated the commencement of this Subchapter V Case.

As a result of the CDTFA's notice of levy, the anticipated costs of litigation, expenses incurred and guaranteed obligations related to the expansion, the Debtor commenced this case under subchapter V of chapter 11 to stabilize its financial situation, and right-size its operations, to be able to emerge from bankruptcy with the goal of continuing its operations on a solid financial footing in the future.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such creditors and equity interest holders would receive in a hypothetical chapter 7 liquidation. The Debtor's liquidation analysis is attached hereto as **Exhibit A** and incorporated herein by this reference

The Debtor's liquidation analysis shows that unsecured creditors would receive $50,361.78 if the assets were liquidated in Chapter 7, which would result in approximately a 2% distribution to unsecured creditors.

### C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also show that it will have enough cash to make the required Plan payments and operate the Debtor's business without the need for further reorganization.

The Debtor's projected financial information / feasibility analysis is attached hereto as **Exhibit B.** and incorporated herein by this reference. The Debtor's projected effective date feasibility analysis is attached hereto as **Exhibit C** and incorporated herein by this reference.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of the Code (60 months) of $63,654.50.

The final Plan payments are expected to be paid on or before December 1, 2031, which is anticipated to be 60 months after the effective date.

**NOTWITHSTANDING THE FOREGOING, THE DEBTOR SHALL BE ENTITLED, AT ITS ELECTION, TO PREPAY ANY AND ALL ALLOWED CLAIMS UNDER THE PLAN WITHOUT PENALTY.**

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of D &D Venture Group, Inc] (the "Debtor") from cash flow from operations and future income.

| This Plan provides for: | | |
|---|---|---|
| | 1 | classes of priority claims; |
| | 2 | classes of secured claims; |
| | 2 | classes of non-priority unsecured claims; and |
| | 1 | classes of equity security holders. |

Non-priority and unsubordinated unsecured creditors in Class 3 (A) holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 10.2 cents on the dollar, consistent with the liquidation analysis set forth on Exhibit A, which is incorporated herein by this reference, and projected disposable income set forth on Exhibit B, which is incorporated herein by this reference. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

## Article 2: Classification of Claims and Interests

2.01 **Class 1** ........................ All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) of the Code, and priority tax claims under § 507(a)(8) of the Code).

2.02 **Class 2** ........................

(A) The claim of Summit Bank, to the extent allowed as a secured claim under § 506 of the Code.

(B) The claim of BHG, LLC to the extent allowed as a secured claim under § 506 of the Code

2.03 **Class 3** ........................

(A) All non-priority unsecured claims allowed under § 502 of the Code.

(B) All non-priority unsecured claims allowed under § 502 of the Code of insiders David Harrison and Damon Pham, including any claim of subrogation or contribution as a result of the payment of the Fremont Bank Loan.

2.04 **Class 4** ........................ Equity interests of the Debtor.

## Article 3: Treatment of Administrative Expense Claims, and Priority Tax Claims

3.01 **Unclassified claims** Under § 1123(a)(1) of the Code, administrative expense claims, and priority tax claims are not classified.

3.02 **Administrative expense claims** Administrative claimants Fox Rothschild LLP, Mac Restructuring Advisors, LLC and the Subchapter V Trustee, Christopher Hayes, will be paid on their allowed claims in full and in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, on the later of (a) the Effective Date of the Plan, or (b) the date on which such Claim is Allowed by a final non-

| | | |
|---|---|---|
| | | appealable order, unless otherwise agreed in writing by the Debtor and the holder of such administrative expense claims.<br><br>Any payments of allowed administrative expenses to Fox Rothschild LLP or Mac Restructuring Advisors, LLC, shall be net of any remaining pre-petition retainers held by those administrative claimants. Fox Rothschild holds a pre-petition retainer of $53,741.50 and Mac Restructuring Advisors holds a pre-petition retainer of $4,965.00. The net fees and expenses incurred by Fox Rothschild as of August 31, 2026, are approximately $150,738.17. Estimated Fees for Mac Restructuring and the Subchapter V Trustee are $25,000.00 each. |
| 3.03 | **Priority tax claims** | The Internal Revenue Service shall receive payment of its allowed $158,756.03 priority tax claim in 54 equal monthly installments of principal and interest at the applicable rate, pursuant to § 511 of the Code which the Debtor estimates to be 10%. The payments shall commence in January 2027. The final payment shall be not later than December 1, 2030**.**<br><br>The California Department of Tax and Fee Administration ("CDTFA") shall receive full payment of its priority tax claims of $470,549.67 in 54 equal monthly installments of principal interest at the applicable rate, pursuant to § 511 of the Code, which the Debtor estimates to be 10%. The payments shall commence in January 2027. The final payment shall be not later than December 1, 2030**.**<br><br>The California Employment Development Department shall receive payment of its allowed $408.10 priority tax claim in cash on the Effective Date.<br><br>The California Franchise Tax Board shall receive payment of its allowed $851.24 priority tax claim in cash on the Effective Date. |

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order. All pre-petition wage priority claims have been paid pursuant to previous orders of this court authorizing payment of those claims The Debtor is not aware of any further priority claims in this class. |
| Class 2 (A) and (B) – **Secured claims of Summit Bank and Bankers Health Group, LLC** | ☒ Impaired<br>☐ Unimpaired | (A) Summit Bank ("Summit") shall receive payment on its approximate $570,000.00 secured claim (Scheduled Claim) as follows: Summit shall retain its lien against its collateral and receive deferred cash payments of at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of Summit's interest in the estate's interest in its collateral. The Debtor will make an initial payment to Summit of $25,000.00 on the Effective Date. |

| Class | Impairment | Treatment |
|---|---|---|
| | | Thereafter the Debtor shall pay Summit in 60 monthly installments of $11,379.54 of principal and interest at the rate of interest which the Court will approve under 11 U.S.C. §1129(b)(2)(A)(i)(II), which the Debtor estimates will be 9.25%.<br>(B) Bankers Health Group, LLC ("BHG") shall receive payment on its $57,874.13 secured claim (filed Claim No. 17) as follows: BHG shall retain its lien against its collateral and receive deferred cash payments of at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of BHG's interest in the estate's interest in its collateral. The Debtor shall pay BHG in 60 monthly installments of $1,194.36 of principal and interest at the rate of interest which the court will approve under 11 U.S.C. §1129(b)(2)(A)(i)(II**),** which Debtor estimates will be 8.75 % per annum**.** |
| Class 3 (A) (B) and (C) – **Non-priority unsecured claims** | ☒ Impaired<br>☐ Unimpaired | Class 3(A) Treatment-Holders of unsubordinated unsecured claims shall receive a pro rata share of the sum of $140,000 over a 5-year term of this Subchapter V plan after payment of allowed administrative expense claims (see ¶ 3.02 above) and allowed priority claims (see ¶ 3.03 above).<br>The total amount to be paid to Class 3 (A) Creditors is $140,000 in the amounts specified **in Exhibit D**, which is attached hereto and incorporated by this reference. This amount exceeds the net disposable income of the Debtor. Payments to Class 3(A) will be paid quarterly and will commence in year 3 of the Plan and continue through the end of the 5-year term.<br>Class 3 (B) Treatment-Holders of subordinated unsecured claims shall receive no distribution until all other unsecured claims are paid in full. |
| Class 4 – **Equity security holders of the Debtor** | ☐ Impaired<br>☒ Unimpaired | The equity security holders of the Debtor shall retain their equity in the Debtor without modification or impairment. |

## Article 5: Allowance and Disallowance of Claims

5.01 **Disputed claim**

A *disputed claim* is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 **Disputed claim reserve**

Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be [select one] ☐ returned to Debtor or ☒ distributed *pro-rata* among allowed claims in accordance with this Plan.

5.03 **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.04 **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

6.01 **Assumed executory contracts and unexpired leases**

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

| Counter Party | Description | Estimated Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| ACE Hardware Corporation | 3 Franchise Agreements | $411,580.00 | See below | See below |
| Adalan Properties LLC | Lease of Warehouse in Hercules, CA | $0 | | |
| Azzopardi Family Partnership & Lynn Bacon Surviving Trustors Trust | Lease of Pacifica Store | $0 | | |
| Carrington & Codding | Lease of Santa Rosa Store | $0 | | |
| Pierce Co Properties | Lease of San Rafael Store | $0 | | |
| Roger Pierce, Trustee | Lease of San Rafael Storage | $0 | | |

As a cure payment for the three Ace Hardware Franchise Agreements, the Debtor will transfer to Ace Hardware on the Effective Date a sufficient number of shares of Ace Hardware Stock that it holds for each of its three locations, totaling approximately 4,214 shares, with a total par value as of March 6, 2026 of approximately $422,300.00. The estimated number of shares to be transferred on the Effective Date is 4,116.

**Rejected executory contracts and unexpired leases**

(a) The Debtor rejects the following executory contracts and unexpired leases as of the effective date:

[List rejected executory contracts and unexpired leases along with the estimated amount of any rejection damage claim, which shall also be included in the schedule of non-priority unsecured claims required by Section 4.01 of the Plan.]

| Counter Party | Description | Estimated Unsecured Claim |
|---|---|---|
| **SCG Marina Bay Business Center, LLC** | Richmond Warehouse | $ Unknown |

(b) The Debtor shall be deemed to reject all executory contracts and unexpired leases that are not specifically assumed in section 6.01(a) of this Plan.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than be

☒ 30 days or ☐ _________ days after the date of the order confirming this Plan.

[Check the box for the applicable deadline for filing a proof of claim arising from the rejection of an executory contract or unexpired lease, and if no box is selected or the selection is blank, the deadline shall be 30 days after the date of the order confirming this Plan.]

## Article 7: Means for Implementation of the Plan

This Plan will be funded through the Debtor's post-Effective Date disposable income from the operation of the Debtor's three remaining Ace Hardware retail stores. The Debtor's income and expense projections for the 5-years following the Effective Date of the Plan are attached hereto as **Exhibit B.** The Debtor will establish a claims reserve for all disputed claims, litigate objections to claims of holders of disputed claims, and prosecute avoidance actions, if any. Damon Pham and David Harrison shall continue serving as the Officers and Directors of the Reorganized Debtor.

## Article 8: General Provisions

8.01 **Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

[Insert additional definitions if necessary].

8.02 **Effective date**

[Select one]

☐ The effective date of this Plan is the first business day following the date that is 14 days after the entry of the final confirmation order, except that the requirement of finality may be waived by the Debtor. If a stay of the confirmation order is in effect on that date, the Debtor may elect to treat the effective date as the first business day after the date on which the stay expires or is otherwise terminated.

☒ The effective date of this Plan is: January 1, 2027.

8.03 **Vesting at Confirmation**

Property of the estate shall: [select one]

☒ revest in the Debtor upon confirmation of the Plan.

☐ not revest in the Debtor at confirmation, but shall be delayed and thereafter vest in the Debtor at the earlier of: (a) completion of all payments due under the Plan; (b) dismissal; (c) discharge; or (d) closing of the case.

☐ [describe]:

Where plan confirmation is nonconsensual under § 1191(b), upon conversion of the case to Ch. 7, the property of the reorganized debtor, or of any liquidating or litigation trust, or of any other successor to the bankruptcy estate under the confirmed plan, that has not been distributed under the plan, will be vested in the Ch. 7 estate.

| | | |
|---|---|---|
| 8.04 | **Plan Disbursements** | After confirmation, all payments due to creditors under the Plan shall be disbursed by the:<br>☒ Debtor.<br>Notwithstanding § 1194(b) of the Code, and unless otherwise ordered by the Court, the Debtor shall be authorized to make all payments due to creditors under the Plan if such election is made in this section of the Plan. Plan Disbursements shall commence on January 1, 2027.<br>If required to make distributions to creditors under the Plan or perform any post-confirmation services, the Subchapter V Trustee shall be entitled to compensation consistent with the hourly rate set forth in the *Verified Statement of Subchapter V Trustee* filed in the Case and reimbursement for all actual and necessary expenses incurred. Post-confirmation compensation due and payable to the Subchapter V Trustee may reduce payments to general unsecured creditors. |
| 8.05 | **Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| 8.06 | **Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| 8.07 | **Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |
| 8.08 | **Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| 8.9 | **Corporate governance** | Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under § 1123(a)(6) of the Code. |
| 8.10 | **Payments** | All payments to be made under the Plan for professional services, costs, or expenses in connection with the case or the Plan as required by §§ 330 and 331 of the Code shall be subject to the approval of the court. |
| 8.11 | **Officers and Directors** | The officers and directors of the Debtor shall remain in their roles post-confirmation. |
| 8.12 | **Insider Retention** | The insiders who were employed or retained by the Debtor shall remain in their roles post-confirmation, at the same or comparable compensation. |
| 8.13 | **Defaults and Remedies** | Failure to pay any amount due under this Plan within 20 days of the due date shall constitute a Default. Upon the occurrence of a Default, any affected creditor may serve a Notice of Default providing a 15-day cure period. Absent a cure within that period, the creditor may present a Motion seeking appropriate relief from the Court, which may but need not include conversion of the case to one under Chapter 7 of the Code. |
| 8.14 | **Retention of Jurisdiction** | The Court may exercise jurisdiction over proceedings concerning: (a) whether Debtor is in Material Default of any Plan obligation; (b) whether the time for |

| | | |
|---|---|---|
| | | performing any Plan obligation should be extended; (c) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court; (d) whether the case should be dismissed or converted to one under Chapter 7; (e) any objections to claims; (f) compromises of controversies under Federal Rule of Bankruptcy Procedure 9019; (g) compensation of professionals; and (h) other questions regarding the interpretation and enforcement of the Plan. |
| 8.15 | **Deadline for Election Under 11 U.S.C. § 1111(b)** | Any creditor that wishes to make an election under § 1111(b)(2) of the Code shall do so no later than 10 days following the filing of the Plan. |

## Article 9: Discharge

[Select one]

☒ Debtor is entitled to a discharge pursuant to § 1141(d)(3) of the Code.

☐ Debtor is not entitled to a discharge pursuant to § 1141(d)(3) of the Code.

☒ **Discharge if the Debtor is a corporate entity under Subchapter V**

If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt to the extent provided in § 1141(d)(6) of the Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code.

## Article 10: Other Provisions

[Insert other provisions, as applicable.]

Respectfully submitted,

D & D Venture Group, Inc.

DocuSigned by: Damon Pham 6F36B05E478C4AE...

[Signature of the Debtor]

Damon Pham

[Printed Name]

Its: Responsible Individual

/s/ Edward Tredinnick

[Signature of the Attorney for the Debtor]

Edward Tredinnick

Edward Tredinnick
Keith C. Owens

## Article 11: Attorney Certification

Docusign Envelope ID: 14D07044-6944-86AA-8078-0A8C55BDF3D1



I am legal counsel for the Debtor in the above-captioned case and hereby certify that the foregoing plan is a true and correct copy of the *Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V* promulgated by the Northern District of California on February 3, 2026 (the "Standard-Form Plan") and

[Select one]

☐ There are no alterations or modifications to any provision of the Standard-Form Plan;

☒ Attached hereto as **Exhibit E** is a redline of Debtor's Plan identifying all alterations or modifications made to any provision of the Standard-Form Plan; or

☐ Below are all alterations or modifications made to any provision of the Standard-Form Plan:

[Insert the article number, page number, and general subject matter for each alternation or modification, as applicable]

I declare that the foregoing is true and correct. Executed this 2d day of October, 2026.

| | |
|---|---|
| /s/ Edward Tredinnick | Edward Tredinnick |
| [Signature of the Attorney for the Debtor] | Edward Tredinnick<br>Keith C. Owens |

## Exhibit A: Liquidation Analysis

**D&D Venture Group, Inc.**

***Liquidation Analysis***

***As of July 31, 2026***

| | Book Value | Liquidation Factor | Liquidation Value | Notes: |
|---|---|---|---|---|
| **Assets** | | | | |
| Cash | 481,100.60 | 100.0% | 481,100.60 | (1) |
| Inventory | 2,389,157.29 | 50.0% | 1,194,578.65 | (2) |
| Equipment | 19,893.05 | 20.0% | 3,978.61 | (3) |
| Fixtures | 343,088.60 | 10.0% | 34,308.86 | (3) |
| Leasehold Improvements-SR | 83,082.01 | 0.0% | - | (4) |
| Leasehold Improvements- | 204,212.76 | 0.0% | - | (4) |
| Software | 44,485.53 | 0.0% | - | (5) |
| Mercedes | 53,702.00 | 19.7% | 10,600.00 | (6) |
| Toyota Tundra | 52,362.97 | 13.5% | 7,050.00 | (6) |
| Transit Vans (2) | 75,840.81 | 61.5% | 46,650.00 | (6) |
| Pacifica Store Advance | 19,419.03 | 0.0% | - | (7) |
| Pre Paid Fees | 10,000.00 | 0.0% | - | (7) |
| Security Deposits | 16,746.00 | 0.0% | - | (7) |
| Ace Stock Subscription | 422,300.00 | 100.0% | 422,300.00 | (8) |
| Intangibles, net | 4,114.26 | 0.0% | - | (9) |
| Total Assets | 4,219,504.91 | | 2,200,566.72 | |
| Less: Chapter 7 Administrative Expenses | | | | |
| Chapter 7 Trustee | | | 87,617.00 | (10) |
| Chapter 7 Trustee Attorney Fees | | | 100,000.00 | (11) |
| Post Petition Rent | 63,000.00 | 6 Months | 378,000.00 | (12) |
| Other Occupancy/Utility Expenses | 17,000.00 | 6 Months | 102,000.00 | (12) |
| | | | 667,617.00 | |
| Less: Chapter 11 Administrative Expenses | | | | |
| Debtor's Counsel | | | 175,000.00 | (11) |
| Debtor's Financial Advisor | | | 25,000.00 | (11) |
| Subchapter V Trustee | | | 25,000.00 | (11) |
| | | | 225,000.00 | |
| **Net Available for Debtor's Creditors** | | | **1,307,949.71** | |
| Secured Creditors | **Claim Amount** | **Recovery %** | **Recovery $** | |
| Summit State Bank | 570,000.00 | 100.0% | 570,000.00 | (13) |
| Bankers Healthcare Group L.L.C. | 57,874.13 | 100.0% | 57,874.13 | (13) |
| | | | 627,874.13 | |
| Net Available for Priority and General Unsecured Creditors | | | 680,075.58 | |
| Priority Claims | | | | |
| Internal Revenue Service | 158,756.03 | 100.0% | 158,756.03 | (13) |
| California Dept of Tax | 470,549.67 | 100.0% | 470,549.67 | (13) |
| Employment Development Department (EDD) | 408.10 | 100.0% | 408.10 | (13) |
| | | | 629,713.80 | |
| **Net Available for General Unsecured Creditors** | | | **50,361.78** | |
| Estimated General Unsecured Creditor Claims | | | 1,795,362.87 | (14) |
| Estimated Lease Rejection Claims | | | 717,900.00 | (15) |
| **Total Unsecured Claims** | | | **2,513,262.87** | |
| **Estimated General Unsecured Creditor Class Recovery** | | | **2.0%** | |

**Notes:**

(1) Based upon balance sheet as of 7/31/26

(2) Assumes liquidation discount average of 20% off of cost, plus another 30% fee for liquidator Paint and bulk hardware (nuts and bolts) could be 60% of cost. These two departments consist of approximately 30% of the total inventory. Seasonal goods would have a much lower recovery.

(3) Estimated net recovery from gross book value (before depreciation) less 30% fee for liquidator

(4) Assumes no net recovery after cost of removal and fee to liquidator

(5) Software is assumed to be outdated and no salvage value

(6) Based upon research for comparable vehicles, Kelly Blue Book

(7) Assumes that deposits and pre-paid fees will be offset against future expenses

(8) Stock certificates in Ace. In a liquidation, Ace could repurchase the stock at face value, payments would be made over a five-year period

(9) Includes Goodwill, Covenant not to compete, loan fees, etc. and assumed to have no salvage value

(10) Chapter 7 trustee fees are calculated by 11 U.S.C. § 326

(11) Estimated professional fees, net of retainers if any

(12) Assumes that the Chapter 7 trustee will need to occupy the debtor's current facilities in order to liquidated all of the inventory and it will take 6 months to liquidated the assets and turn the space over to the landlords. Assumes rent and utilities to be paid as a Chapter 7 administrative expense

(13) Per filed proof of claim or Debtor's scheduled amounts

(14) Per Debtor's claims analysis and includes any filed claims

(15) Assumes landlords are entitled to an unsecured claim equal to 12 months of rent for a lease rejection claim

## Exhibit B: 5-Year Projection Feasibility

**D&D Venture Group, Inc.**

***Plan Feasibility Analysis***

| | Year 1 2027 | Year 2 2028 | Year 3 2029 | Year 4 2030 | Year 5 2031 | 5 Yr Total |
|---|---|---|---|---|---|---|
| **Santa Rosa Hardware** | | | | | | |
| **Hardware** | **2,275,781** | **2,321,297** | **2,367,723** | **2,415,077** | **2,463,379** | |
| **Nursery** | **75,767** | **79,555** | **83,533** | **87,709** | **92,095** | |
| **Gift** | **161,066** | **169,120** | **177,576** | **186,454** | **195,777** | |
| **Total Sales** | **2,512,614** | **2,569,971** | **2,628,831** | **2,689,241** | **2,751,250** | |
| Hardware Purchasing | 1,137,891 | 1,160,648 | 1,183,861 | 1,207,539 | 1,231,689 | |
| Nursery Purchasing | 34,095 | 35,800 | 37,590 | 39,469 | 41,443 | |
| Gift Purchasing | 67,648 | 71,030 | 74,582 | 78,311 | 82,226 | |
| **Cost of Goods Sold** | 1,239,633 | 1,267,478 | 1,296,033 | 1,325,319 | 1,355,358 | |
| **Gross Profit** | **1,272,981** | **1,302,493** | **1,332,798** | **1,363,922** | **1,395,892** | |
| Payroll | 546,605 | 552,071 | 557,592 | 563,168 | 568,800 | |
| Rent | 277,365 | 284,299 | 291,407 | 298,692 | 306,159 | |
| Utilities | 44,772 | 44,772 | 44,772 | 44,772 | 44,772 | |
| Advertising | 65,884 | 65,884 | 65,884 | 65,884 | 65,884 | |
| Insurance | 26,284 | 26,284 | 26,284 | 26,284 | 26,284 | |
| Benefits | 23,918 | 23,918 | 23,918 | 23,918 | 23,918 | |
| CC Processing | 62,815 | 64,249 | 65,721 | 67,231 | 68,781 | |
| Freight | 53,674 | 54,748 | 55,843 | 56,959 | 58,099 | |
| Software | 12,486 | 12,486 | 12,486 | 12,486 | 12,486 | |
| Other Expenses | 3,409 | 3,580 | 3,759 | 3,947 | 4,144 | |
| **Total Operating Expenses** | **1,117,213** | **1,132,291** | **1,147,665** | **1,163,341** | **1,179,327** | |
| **Net Operating Income** | **155,768** | **170,202** | **185,133** | **200,581** | **216,565** | **928,249** |
| **Pacifica** | | | | | | |
| **Hardware** | **1,632,200** | **1,664,844** | **1,698,141** | **1,732,104** | **1,766,746** | |
| **Nursery** | **175,579** | **180,847** | **186,272** | **191,860** | **197,616** | |
| **Gift** | **9,194** | **10,114** | **11,125** | **12,238** | **13,462** | |
| **Total Sales** | **1,816,974** | **1,855,805** | **1,895,539** | **1,936,202** | **1,977,824** | |
| Hardware Purchasing | 769,906 | 785,304 | 801,010 | 817,030 | 833,371 | |
| Nursery Purchasing | 74,538 | 76,775 | 79,078 | 81,450 | 83,894 | |
| Gift Purchasing | 3,511 | 3,862 | 4,248 | 4,673 | 5,140 | |
| **Cost of Goods Sold** | 847,955 | 865,940 | 884,336 | 903,153 | 922,404 | |
| **Gross Profit** | **969,019** | **989,865** | **1,011,203** | **1,033,049** | **1,055,420** | |
| Payroll | 453,926 | 463,005 | 472,265 | 481,710 | 491,344 | |
| Rent | 66,000 | 66,000 | 66,000 | 66,000 | 66,000 | |
| Utilities | 20,976 | 20,976 | 20,976 | 20,976 | 20,976 | |
| Advertising | 60,424 | 60,424 | 60,424 | 60,424 | 60,424 | |
| Insurance | 19,071 | 19,071 | 19,071 | 19,071 | 19,071 | |
| Benefits | 18,910 | 18,910 | 18,910 | 18,910 | 18,910 | |
| CC Processing | 41,546 | 41,546 | 41,546 | 41,546 | 41,546 | |
| Freight | 37,374 | 37,374 | 37,374 | 37,374 | 37,374 | |
| Software | 9,060 | 9,060 | 9,060 | 9,060 | 9,060 | |
| Other Expenses | 14,950 | 14,950 | 14,950 | 14,950 | 14,950 | |
| **Total Operating Expenses** | **742,236** | **751,315** | **760,575** | **770,020** | **779,654** | |
| **Net Operating Income** | **226,783** | **238,550** | **250,628** | **263,029** | **275,765** | **1,254,755** |

# D&D Venture Group, Inc.
## *Plan Feasibility Analysis*

| | Year 1 2027 | Year 2 2028 | Year 3 2029 | Year 4 2030 | Year 5 2031 | 5 Yr Total |
|---|---|---|---|---|---|---|
| **San Rafael** | | | | | | |
| **Hardware** | **2,821,646** | **2,878,079** | **2,935,641** | **2,994,354** | **3,054,241** | |
| **Nursery** | **1,416,148** | **1,458,633** | **1,502,392** | **1,547,463** | **1,593,887** | |
| **Gift** | **752,038** | **789,639** | **829,121** | **870,578** | **914,106** | |
| **Sales** | **4,989,832** | **5,126,352** | **5,267,154** | **5,412,395** | **5,562,235** | |
| Hardware Purchasing | 1,369,731 | 1,397,126 | 1,425,068 | 1,453,570 | 1,482,641 | |
| Nursery Purchasing | 667,613 | 734,374 | 807,811 | 888,593 | 977,452 | |
| Gift Purchasing | 306,831 | 312,968 | 319,227 | 325,612 | 332,124 | |
| **Cost of Goods Sold** | 2,344,175 | 2,444,468 | 2,552,107 | 2,667,774 | 2,792,217 | |
| **Gross Profit** | **2,645,657** | **2,681,884** | **2,715,047** | **2,744,620** | **2,770,017** | |
| Payroll | 768,407 | 783,775 | 799,451 | 815,440 | 831,748 | |
| Rent | 264,758 | 271,376 | 278,161 | 285,115 | 292,243 | |
| Utilities | 105,760 | 105,760 | 105,760 | 105,760 | 105,760 | |
| Advertising | 106,652 | 106,652 | 106,652 | 106,652 | 106,652 | |
| Insurance | 44,330 | 44,330 | 44,330 | 44,330 | 44,330 | |
| Auto | 47,320 | 47,320 | 47,320 | 47,320 | 47,320 | |
| Benefits | 30,063 | 30,063 | 30,063 | 30,063 | 30,063 | |
| Merchant Discounts | 114,849 | 114,849 | 114,849 | 114,849 | 114,849 | |
| Freight | 67,144 | 67,144 | 67,144 | 67,144 | 67,144 | |
| Software | 26,323 | 26,323 | 26,323 | 26,323 | 26,323 | |
| Maintenance | 17,836 | 17,836 | 17,836 | 17,836 | 17,836 | |
| Store Supplies | 13,832 | 13,832 | 13,832 | 13,832 | 13,832 | |
| Transportation | 20,020 | 20,020 | 20,020 | 20,020 | 20,020 | |
| Other Expenses | 110,349 | 110,349 | 110,349 | 110,349 | 110,349 | |
| **Total Operating Expenses** | **1,737,643** | **1,759,630** | **1,782,090** | **1,805,033** | **1,828,469** | |
| **Net Operating Income** | **908,014** | **922,254** | **932,957** | **939,588** | **941,548** | **4,644,361** |
| **Warehouse/Administrative** | | | | | | |
| Warehouse Salaries | 167,535 | 170,886 | 174,303 | 177,789 | 181,345 | |
| Visual Merchandising Salaries | 94,860 | 96,757 | 98,692 | 100,666 | 102,680 | |
| Administrative Salaries | 45,100 | 46,002 | 46,922 | 47,861 | 48,818 | |
| Manager Salaries | 545,726 | 545,726 | 545,726 | 545,726 | 545,726 | |
| Rent | 123,000 | 123,000 | 123,000 | 123,000 | 123,000 | |
| Utilities | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | |
| Insurance | 11,113 | 11,113 | 11,113 | 11,113 | 11,113 | |
| Benefits | 46,910 | 46,910 | 46,910 | 46,910 | 46,910 | |
| **Total Operating Expenses** | **1,052,244** | **1,058,393** | **1,064,666** | **1,071,065** | **1,077,591** | **5,323,959** |

# D&D Venture Group, Inc.

## *Plan Feasibility Analysis*

| | Year 1<br>2027 | Year 2<br>2028 | Year 3<br>2029 | Year 4<br>2030 | Year 5<br>2031 | 5 Yr Total |
|---|---|---|---|---|---|---|
| **Consolidated** | | | | | | |
| **Hardware** | **6,729,628** | **6,864,220** | **7,001,505** | **7,141,535** | **7,284,366** | |
| **Nursery** | **1,667,494** | **1,719,034** | **1,772,196** | **1,827,033** | **1,883,598** | |
| **Gift** | **922,298** | **968,873** | **1,017,822** | **1,069,270** | **1,123,345** | |
| **Total Sales** | **9,319,420** | **9,552,128** | **9,791,523** | **10,037,838** | **10,291,309** | |
| Hardware Purchasing | 3,277,528 | 3,343,078 | 3,409,940 | 3,478,139 | 3,547,701 | |
| Nursery Purchasing | 776,246 | 846,948 | 924,479 | 1,009,512 | 1,102,788 | |
| Gift Purchasing | 377,990 | 387,860 | 398,057 | 408,595 | 419,490 | |
| **Cost of Goods Sold** | **4,431,763** | **4,577,886** | **4,732,476** | **4,896,246** | **5,069,980** | |
| | | | | | | |
| **Gross Profit** | **4,887,657** | **4,974,241** | **5,059,048** | **5,141,592** | **5,221,329** | |
| | | | | | | |
| Payroll | 2,622,159 | 2,658,222 | 2,694,951 | 2,732,359 | 2,770,460 | |
| Rent | 731,123 | 744,676 | 758,567 | 772,807 | 787,402 | |
| Utilities | 189,508 | 189,508 | 189,508 | 189,508 | 189,508 | |
| Advertising | 232,960 | 232,960 | 232,960 | 232,960 | 232,960 | |
| Insurance | 100,798 | 100,798 | 100,798 | 100,798 | 100,798 | |
| Auto | 47,320 | 47,320 | 47,320 | 47,320 | 47,320 | |
| Benefits | 119,801 | 119,801 | 119,801 | 119,801 | 119,801 | |
| CC Processing | 219,210 | 220,644 | 222,116 | 223,626 | 225,176 | |
| Freight | 158,192 | 159,265 | 160,360 | 161,477 | 162,616 | |
| Software | 47,868 | 47,868 | 47,868 | 47,868 | 47,868 | |
| Maintenance | 17,836 | 17,836 | 17,836 | 17,836 | 17,836 | |
| Store Supplies | 13,832 | 13,832 | 13,832 | 13,832 | 13,832 | |
| Transportation | 20,020 | 20,020 | 20,020 | 20,020 | 20,020 | |
| Other Expenses | 128,708 | 128,879 | 129,058 | 129,246 | 129,443 | |
| **Total Operating Expenses** | **4,649,336** | **4,701,629** | **4,754,996** | **4,809,459** | **4,865,041** | |
| | | | | | | |
| **Net Operating Income** | **238,321** | **272,612** | **304,052** | **332,133** | **356,288** | |
| | | | | | | |
| **Ace Cash Rebate** | **70,000** | **70,000** | **70,000** | **70,000** | **70,000** | |
| | | | | | | |
| **Net Operating Income** | **308,321** | **342,612** | **374,052** | **402,133** | **426,288** | **1,853,406** |

# D&D Venture Group, Inc.
## *Plan Feasibility Analysis*

| | | Year 1 2027 | Year 2 2028 | Year 3 2029 | Year 4 2030 | Year 5 2031 | 5 Yr Total |
|---|---|---|---|---|---|---|---|
| **Plan Payments** | | | | | | | |
| **Secured:** | | | | | | | |
| **California Dept Of Tax** | **470,550** | | | | | | |
| Rate | 10.00% | | | | | | |
| Period | **54** | | | | | | |
| Payment | $ 10,856.71 | 130,281 | 130,281 | 130,281 | 130,281 | 65,140 | 586,263 |
| **Summit** | **570,000** | | | | | | |
| Effectvie Date Payment | **25,000** | 25,000 | | | | | 25,000 |
| Amortized Balance | **545,000** | | | | | | |
| Rate- Prime + 2.5% | 9.25% | | | | | | |
| Period | **60** | | | | | | |
| Payment | $ 11,379.54 | 136,555 | 136,555 | 136,555 | 136,555 | 136,555 | 682,773 |
| **Bankers Healthcare Group L.L.C.** | **$ 57,874.13** | | | | | | |
| Rate- Prime + 2% | 8.75% | | | | | | |
| Period | **60** | | | | | | |
| Payment | $ 1,194.36 | 14,332 | 14,332 | 14,332 | 14,332 | 14,332 | 71,662 |
| **Admin Claims** | | | | | | | |
| Debtor's Counsel | | 175,000 | | | | | 175,000 |
| Debtor's FA | | 25,000 | | | | | 25,000 |
| Sub V Trustee | | 25,000 | | | | | 25,000 |
| **Priority:** | | | | | | | |
| **Internal Revenue Service** | **$ 158,756.03** | | | | | | |
| Rate | 10.0% | | | | | | |
| Period | **54** | | | | | | |
| Payment | $ 3,662.88 | 43,955 | 43,955 | 43,955 | 43,955 | 21,977 | 197,796 |
| Annual | **43,955** | | | | | | |
| **Employment Development Department** | **$ 408.10** | | | | | | |
| Effectvie Date Payment | | 408 | - | - | - | - | 408 |
| **California Franchise Tax Board** | **$ 851.24** | | | | | | |
| Effectvie Date Payment | | 851 | | | | | 851 |
| **Total Creditor Payments Before GUC** | | **576,381** | **325,122** | **325,122** | **325,122** | **238,004** | **1,789,752** |
| **NET DISPOSABLE INCOME** | | **(268,060)** | **17,490** | **48,930** | **77,011** | **188,283** | **63,655** |
| **General Unsecured Creditor Payments** | | - | - | **40,000** | **50,000** | **50,000** | **140,000** |
| **Net Cash Flow** | | (268,060) | 17,490 | 8,930 | 27,011 | 138,283 | (76,345) |
| Beginning Cash | | 524,270 | 256,210 | 273,700 | 282,630 | 309,641 | 524,270 |
| **Ending Cash** | | **256,210** | **273,700** | **282,630** | **309,641** | **447,924** | **447,924** |

## Exhibit C: Effective Date Cash Payments

# D&D Venture Group, Inc.

## *Effective Date Payments*

| | | |
|---|---|---|
| **Estimated Cash on Hand as of the Effective Date** | **$** | **524,269.81** |
| | | |
| **Effective Date Payments** | | |
| **Admin Claims** | | |
| Debtor's Counsel | | 175,000.00 |
| Debtor's FA | | 25,000.00 |
| Sub V Trustee | | 25,000.00 |
| | | |
| **Priority Claims** | | |
| Employment Development Department | | 408.10 |
| California Franchise Tax Board | | 851.24 |
| | | |
| **Payment to Summitt Bank** | | 25,000.00 |
| | | |
| **Total Effective Date Payments** | | **251,259.34** |
| | | |
| **Balance of Cash on Hand** | **$** | **273,010.47** |

## Exhibit D: GUC Claim Recovery

**D&D Venture Group, Inc.**

***General Unsecured Creditor Recovery***

| Sch | Name | Scheduled Claim Amt | Claims Filed: Claim # | GUC Amt. | Notes | Claim Estimate GUC | $ 140,000.00 Plan Payments | Recovery % |
|---|---|---|---|---|---|---|---|---|
| F | SCG Marina Bay Business Center, LL( | 383,869.21 | | | | 383,869.21 | 39,015.69 | 10.2% |
| F | Bankers Healthcare Group L.L.C. | 177,849.90 | 16.1 | 192,887.20 | | 192,887.20 | 19,604.67 | 10.2% |
| F | OnDeck / ODK Capital, LLC | 119,103.06 | 20.1 | 119,103.06 | | 119,103.06 | 12,105.40 | 10.2% |
| F | Wells Fargo SBL | 76,360.79 | 13.1 | 76,360.79 | | 76,360.79 | 7,761.16 | 10.2% |
| F | Chase INK 8509 | 56,201.94 | 4.1 | 56,201.94 | | 56,201.94 | 5,712.25 | 10.2% |
| F | Chase INK 8040 | 54,587.75 | 141 | 55,709.07 | | 55,709.07 | 5,662.16 | 10.2% |
| F | Blooms | 44,597.92 | 5.1 | 51,178.82 | Claim is for all 3 locations | 51,178.82 | 5,201.71 | 10.2% |
| F | Capital One Business | 48,908.79 | 8.1 | 49,047.16 | | 49,047.16 | 4,985.05 | 10.2% |
| F | Annadel Commercial Land Co LLC | 45,016.60 | | | | 45,016.60 | 4,575.40 | 10.2% |
| F | EB Stone & Son, Inc | 34,594.46 | 1.1 | 43,548.74 | Claim is for all 3 locations | 43,548.74 | 4,426.21 | 10.2% |
| F | Wells Fargo SBCS | 35,696.96 | 12.1 | 35,771.96 | | 35,771.96 | 3,635.79 | 10.2% |
| F | Premier Color Nursery, Inc | 25,634.45 | 3.1 | 35,734.16 | | 35,734.16 | 3,631.95 | 10.2% |
| F | Bank of America Business | 28,979.46 | | | | 28,979.46 | 2,945.41 | 10.2% |
| F | American Express Business | 26,056.72 | 15.1 | 26,056.72 | | 26,056.72 | 2,648.35 | 10.2% |
| F | Wells Fargo SBL | 21,303.31 | 10.1 | 21,303.31 | | 21,303.31 | 2,165.23 | 10.2% |
| F | Monterey Bay Nursery | 6,832.46 | 7.1 | 8,965.03 | | 8,965.03 | 911.19 | 10.2% |
| F | Kaiser Permanente | 8,596.45 | | | | 8,596.45 | 873.73 | 10.2% |
| F | Sunborne Nursery | 8,272.67 | | | | 8,272.67 | 840.82 | 10.2% |
| F | Orgill Inc. | 8,223.99 | | | | 8,223.99 | 835.87 | 10.2% |
| F | Renee's Garden Inc | 7,025.19 | | | | 7,025.19 | 714.03 | 10.2% |
| F | Hollandia | 6,765.79 | | | | 6,765.79 | 687.66 | 10.2% |
| F | Sunborne Nursery | 6,390.68 | | | | 6,390.68 | 649.54 | 10.2% |
| F | Soquel Nursery Growers | 6,251.61 | | | | 6,251.61 | 635.40 | 10.2% |
| F | Nature Born Foods Inc. Dba The Pie C | 5,868.00 | | | | 5,868.00 | 596.41 | 10.2% |
| F | Soquel Nursery Growers | 5,781.56 | | | | 5,781.56 | 587.63 | 10.2% |
| F | Nature Born Foods Inc. Dba The Pie C | 4,992.00 | | | | 4,992.00 | 507.38 | 10.2% |
| F | Botanical Interests Inc | 4,937.20 | | | | 4,937.20 | 501.81 | 10.2% |
| F | Nature Born Foods Inc. Dba The Pie C | 4,704.00 | | | | 4,704.00 | 478.11 | 10.2% |
| F | Park Greenhouse | 4,473.97 | | | | 4,473.97 | 454.73 | 10.2% |
| F | Sparetime Supply | 4,138.60 | 21.1 | 4,163.41 | | 4,163.41 | 423.16 | 10.2% |
| F | Park Greenhouse | 4,146.33 | | | | 4,146.33 | 421.42 | 10.2% |
| F | Fremont Business | 3,883.18 | | | | 3,883.18 | 394.68 | 10.2% |
| F | Sweet Water Nursey | 3,714.80 | | | | 3,714.80 | 377.56 | 10.2% |
| F | Wells Fargo SBL | 3,588.56 | 11.1 | 3,588.56 | | 3,588.56 | 364.73 | 10.2% |
| F | Curious Flora Nursery Llc | 3,573.90 | | | | 3,573.90 | 363.24 | 10.2% |
| F | Creative Co-Op | 3,511.64 | | | | 3,511.64 | 356.92 | 10.2% |
| F | Willamette Evergreen LLC | 3,431.50 | | | | 3,431.50 | 348.77 | 10.2% |
| F | City Of Pacifica False Alarm Reductio | 3,391.50 | | | | 3,391.50 | 344.71 | 10.2% |
| F | Hachette Book Group | 3,121.94 | | | | 3,121.94 | 317.31 | 10.2% |
| F | Peak Seasons | 2,879.45 | | | | 2,879.45 | 292.66 | 10.2% |
| F | Fremont Business | 2,306.05 | | | | 2,306.05 | 234.38 | 10.2% |
| F | California Greenhouse | 2,178.56 | | | | 2,178.56 | 221.42 | 10.2% |
| F | RSVP International | 2,117.25 | | | | 2,117.25 | 215.19 | 10.2% |
| F | Twos Company Inc | 1,600.06 | | | | 1,600.06 | 162.63 | 10.2% |
| F | Sweet Water Nursey | 1,399.60 | | | | 1,399.60 | 142.25 | 10.2% |
| F | Fremont Business | 1,188.78 | | | | 1,188.78 | 120.83 | 10.2% |
| F | Sunborne Nursery | 1,182.85 | | | | 1,182.85 | 120.22 | 10.2% |
| | PG&E | | 18.1 | 1,168.59 | | 1,168.59 | 118.77 | 10.2% |
| F | Infinitetech Services | 1,166.06 | | | | 1,166.06 | 118.52 | 10.2% |
| F | Glt Logistics | 1,069.89 | | | | 1,069.89 | 108.74 | 10.2% |
| F | Quench | 922.77 | | | | 922.77 | 93.79 | 10.2% |
| F | Willamette Evergreen LLC | 882.25 | | | | 882.25 | 89.67 | 10.2% |
| F | Bay Alarm Company | 862.24 | | | | 862.24 | 87.64 | 10.2% |
| F | Bay Alarm Company | 848.94 | | | | 848.94 | 86.28 | 10.2% |
| F | Park Greenhouse | 829.81 | | | | 829.81 | 84.34 | 10.2% |
| | FedEx | | 19.1 | 766.85 | | 766.85 | 77.94 | 10.2% |
| F | RedBull | 655.80 | | | | 655.80 | 66.65 | 10.2% |
| F | First Alarm | 568.32 | | | | 568.32 | 57.76 | 10.2% |
| F | Jose Lopez/J&L Nursey | 559.00 | | | | 559.00 | 56.82 | 10.2% |
| F | AG Security Services, Inc. | 509.26 | | | | 509.26 | 51.76 | 10.2% |
| F | Quench | 504.76 | | | | 504.76 | 51.30 | 10.2% |
| F | Willscot | 409.03 | | | | 409.03 | 41.57 | 10.2% |
| | ULine | | 2.1 | 398.70 | | 398.70 | 40.52 | 10.2% |
| F | First Alarm | 389.15 | | | | 389.15 | 39.55 | 10.2% |
| F | Quench | 359.70 | | | | 359.70 | 36.56 | 10.2% |
| F | Botanical Interests Inc | 323.30 | | | | 323.30 | 32.86 | 10.2% |
| F | Willamette Evergreen LLC | 320.50 | | | | 320.50 | 32.57 | 10.2% |
| F | Schylling Inc. | 296.11 | | | | 296.11 | 30.10 | 10.2% |
| F | Quench | 231.01 | | | | 231.01 | 23.48 | 10.2% |
| | | 1,330,939.34 | | 781,954.07 | | 1,377,437.74 | 140,000.00 | 10.2% |

## Exhibit E: Redline Plan Comparison

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

In re **D & D VENTURE GROUP, INC.,**

Debtor.

Case No. 26-30496-DM

# EXHIBIT E

## Redline of Debtor's Amended Plan of Reorganization Against the Standard-Form Plan

## Explanatory Note

Pursuant to Article 11 (Attorney Certification) of the Northern District of California Standard-Form Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V (rev. February 3, 2026) (the "Standard-Form Plan"), this Exhibit E identifies all alterations or modifications made to any provision of the Standard-Form Plan in the Debtor's Amended Plan of Reorganization, Dated October 2, 2026 (the "Debtor's Plan").

This redline was prepared by comparing the Standard-Form Plan (DOCX) against the Debtor's Plan (PDF) on a provision-by-provision and word-level basis. Every difference—additions, deletions, substitutions, fill-ins of form blanks, selections among form alternatives, removal of bracketed drafting instructions, header/footer changes, and replacement of form-template exhibits—is reflected herein.

## Redline Conventions (Legend)

~~Red strikethrough text~~ = text from the Standard-Form Plan that has been deleted or replaced.

Blue double-underlined text = text inserted by the Debtor that does not appear in the Standard-Form Plan.

Black text = text that is unchanged between the two versions.

**Convention for Exhibits A–D:** The Standard-Form Plan contains Exhibits A through D as form templates. The Debtor's Plan replaces those templates with completed exhibits, adds New Exhibit D (GUC Claim Recovery), and adds New Exhibit E (Redline Plan Comparison). Because the exhibit content differs entirely from the form templates, the exhibit pages are not redlined line-by-line; instead, each replaced or added exhibit is noted as an insertion in the body redline where it is first referenced.

## Summary of Modifications

| No. | Provision / Section | Nature of Change [Category] | Description |
|---|---|---|---|
| 1 | Caption / Header (p.1) | Fill-in / Substitution [Form fill-in] | Debtor name "D & D VENTURE GROUP, INC." and Case No. 26-30496-DM filled in; "amended filing" box checked; title changed from "[Name of Debtor]'s Plan of Reorganization, Dated [Insert Date]" to "D & D Venture Group, Inc.'s Amended Plan of Reorganization, Dated October 2, 2026." |
| 2 | Caption / Footer (all pp.) | Addition [Substantive] | Document number 190314238 added to footer of every page. |
| 3 | Background A | Substitution | Single-sentence form template ("The Debtor is a [corporation, partnership, etc.]...") |

| No. | Provision / Section | Nature of Change [Category] | Description |
|---|---|---|---|
| | (pp.1-2) | [Substantive] | replaced with multi-paragraph narrative describing: California corporation formed 2005; three ACE Hardware stores (San Rafael, Santa Rosa, Pacifica); failed Sunnyvale expansion via DD Hardware LLC; Fremont Bank SBA loan guaranty; principals sold residence paying off Fremont Bank Loan; affiliate closed August 2025; high-interest bridge loans; trust fund tax arrears; CDTFA levy notice ~June 8, 2026. |
| 4 | Background B (p.2) | Substitution [Substantive] | "chapter 7 liquidation" changed to "hypothetical chapter 7 liquidation"; "A liquidation analysis is attached to the Plan as Exhibit A." changed to "The Debtor's liquidation analysis is attached hereto as Exhibit A and incorporated herein by this reference"; blank filled with $50,361.78; added "which would result in approximately a 2% distribution to unsecured creditors." |
| 5 | Background C (p.2) | Substitution / Addition [Substantive] | "operate the debtor's business, if contemplated by the Plan" changed to "operate the Debtor's business without the need for further reorganization" (deletion of conditional); Exhibits B & C made "attached hereto ... incorporated herein by this reference"; "(3 to 5 years)" changed to "(60 months)"; PDI filled in as $63,654.50; final payment date "on or before December 1, 2031 ... 60 months"; NEW all-caps sentence added re Debtor's election to prepay without penalty. |
| 6 | Article 1 (p.3) | Fill-in / Substitution [Mixed] | Debtor name filled as "D &D Venture Group, Inc]" (with bracket typo); source of payment: "cash flow from operations and future income"; classes: 1/2/2/1; "Non-priority unsecured creditors" changed to "Non-priority and unsubordinated unsecured creditors in Class 3 (A)"; form alternatives "[choose one] ... [or] is unable to estimate" deleted; 10.2 cents filled in; Exhibit A/B references expanded with "set forth on" and "incorporated herein by this reference." |
| 7 | Article 2 (pp.3-4) | Fill-in / Deletion / Addition [Substantive] | 2.01: bracket instruction "[Add classes of priority claims, if applicable]" deleted. 2.02: split into (A) Summit Bank and (B) BHG, LLC; bracketed note re section 1129(a)(9)(D) deleted. 2.03: split into (A) general unsecured and NEW (B) insider claims of David Harrison & Damon Pham (subrogation/contribution from Fremont Bank Loan payment); bracket deleted. 2.04: individual-debtor note deleted. |
| 8 | Article 3, section 3.02 (pp.3-4) | Substitution [Substantive] | Form alternatives replaced with specific administrative-expense treatment: Fox Rothschild LLP, Mac Restructuring Advisors, LLC, and Sub V Trustee Christopher Hayes; paid in full in cash on later of Effective Date or date allowed; NEW retainer-netting language (Fox retainer $53,741.50; Mac $4,965.00; net fees through Aug 31, 2026 ~$150,738.17; Mac and Trustee est. $25,000 each). |
| 9 | Article 3, section 3.03 (p.4) | Fill-in / Substitution [Substantive] | Priority tax claims filled: IRS $158,756.03 in 54 monthly installments at section 511 rate est. 10%, commencing Jan 2027, final Dec 1, 2030; CDTFA $470,549.67 same terms; EDD $408.10 and FTB $851.24 in cash on Effective Date. |
| 10 | Article 4, Class 1 (p.4) | Fill-in / Substitution [Substantive] | Treatment filled: unimpaired; wage priority claims already paid per prior orders; Debtor not aware of further priority claims. |
| 11 | Article 4, Class 2 (pp.4-5) | Substitution [Substantive] | Heading changed to "(A) and (B) - Secured claims of Summit Bank and Bankers Health Group, LLC." Summit ~$570,000, $25,000 initial payment, 60 monthly at $11,379.54 at est. 9.25%; BHG $57,874.13 (Claim No. 17), 60 installments $1,194.36 at est. 8.75%. Form placeholders/brackets deleted. |
| 12 | Article 4, Class 3 (p.5) | Substitution / Addition [Substantive] | Heading changed to "Class 3 (A) (B) and (C)"; 3(A) pro rata share of $140,000 over 5 years per Exhibit D, quarterly commencing year 3; NEW 3(B) subordinated insider claims, no distribution until others paid in full; form notes re convenience class/schedule deleted. |
| 13 | Article 4, Class 4 (p.5) | Fill-in [Substantive] | Equity holders retain equity unimpaired; "[Insert treatment...]" replaced with specific treatment. |
| 14 | Article 5, section 5.02 (p.6) | Substitution [Substantive] | "distributed pro-rata among allowed claims in this class" changed to "distributed pro-rata among allowed claims in accordance with this Plan." |
| 15 | Article 5, section 5.03 (p.6) | Deletion [Form fill-in] | Brackets around "by a final non-appealable order" removed (selecting that language). |
| 16 | Article 6, section 6.01 (pp.6-7) | Fill-in / Addition [Substantive] | Assumed-leases table filled with 6 counterparties (ACE Hardware Corporation 3 Franchise Agreements cure $411,580; Adalan Properties, Azzopardi, Carrington & Codding, Pierce Co Properties, Roger Pierce - $0 cure each); bracket instruction deleted; NEW paragraph re cure via transfer of Ace Hardware stock (~4,214 shares, par ~$422,300). |
| 17 | Article 6, section 6.02 (p.7) | Fill-in [Substantive] | Rejected-lease table filled: SCG Marina Bay Business Center, LLC Richmond Warehouse, claim $Unknown; "[select one]" deleted; 30-day deadline apparently selected. |

| No. | Provision / Section | Nature of Change [Category] | Description |
|---|---|---|---|
| 18 | Article 7 (p.7) | Substitution [Substantive] | Bracketed instruction replaced with specific implementation language: funding from post-Effective Date disposable income of three stores; Exhibit B projections; claims reserve; avoidance actions; Pham and Harrison continue as Officers and Directors. |
| 19 | Article 8, section 8.02 (p.7) | Selection of Option [Form fill-in] | Effective date of Plan is January 1, 2027 (second option selected). |
| 20 | Article 8, section 8.03 (p.7) | Selection of Option [Form fill-in] | First option selected (property revests upon confirmation); other options retained as unselected form text. |
| 21 | Article 8, section 8.04 (p.8) | Selection / Addition [Substantive] | "Debtor shall be authorized" changed to "the Debtor shall be authorized"; "Subchapter V Trustee" and "[describe]" options deleted; NEW sentence: "Plan Disbursements shall commence on January 1, 2027." |
| 22 | Article 8, section 8.08 (p.8) | Fill-in [Form fill-in] | "State of California" filled in; stray closing bracket "]" removed. |
| 23 | Article 8, section 8.9 (p.8) | Deletion [Form fill-in] | "[Include for corporate debtors only]" instruction deleted (retained substantive text). |
| 24 | Article 8, section 8.11 (p.8) | Deletion [Form fill-in] | ", except ____" and "[Include for corporate debtors only]" deleted. |
| 25 | Article 8, section 8.12 (p.8) | Deletion [Form fill-in] | ", except ____" and "[Include for corporate debtors only]" deleted. |
| 26 | Article 9 (p.9) | Selection / Deletion [Substantive] | Discharge: first option ("entitled to a discharge") selected; individual-debtor and partnership discharge sections deleted; corporate entity discharge section retained. |
| 27 | Article 10 (p.9) | No change [N/A] | "[Insert other provisions, as applicable.]" placeholder retained without change. |
| 28 | Signatures (p.9) | Fill-in / Deletion [Mixed] | Debtor signature block filled: "D & D Venture Group, Inc.," Damon Pham, "Its: Responsible Individual"; Co-Debtor block deleted; Attorney: /s/ Edward Tredinnick, Keith C. Owens. |
| 29 | Article 11 (p.10) | Fill-in / Selection [Substantive] | Promulgation date "____, 2024" changed to "February 3, 2026"; Exhibit E option selected; execution date: "2d day of October, 2026"; attorney signatures filled. |
| 30 | Exhibit A (pp.11-12) | Substitution [Substantive] | Form template (real property/personal property tables) replaced with Debtor's Liquidation Analysis as of July 31, 2026 (total assets book $4,219,504.91; net available for GUC $50,361.78; total unsecured $2,513,262.87; 2.0% recovery). |
| 31 | Exhibit B (pp.13-17) | Substitution [Substantive] | Form "Disposable Income Analysis" template replaced with "5-Year Projection Feasibility" (store-by-store projections 2027-2031; PDI $63,655; GUC payments $140,000; beginning cash $524,270; ending cash $447,924). |
| 32 | Exhibit C (pp.18-19) | Substitution [Substantive] | Form "Effective Date Feasibility Analysis" template replaced with "Effective Date Cash Payments" (cash $524,269.81; total payments $251,259.34; balance $273,010.47). |
| 33 | NEW Exhibit D (pp.20-21) | Addition [Substantive] | New exhibit: "GUC Claim Recovery" ($140,000 total; 10.2% recovery; lists all unsecured creditors with claim amounts and plan recovery). |
| 34 | NEW Exhibit E (p.22) | Addition [Substantive] | New exhibit: "Redline Plan Comparison" (placeholder page in Debtor's Plan referencing this document). |

# FULL REDLINE

## Caption / Header

Debtor Name: D & D VENTURE GROUP, INC.

United States Bankruptcy Court for the Northern District of California

Case Number: 26-30496-DM

Check if this is an amended filing [checked]

Northern District of California

Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V

~~[Name of Debtor]'s Plan of Reorganization, Dated [Insert Date]~~ D & D Venture Group, Inc.'s Amended Plan of Reorganization, Dated October 2, 2026

Footer added on all pages: 190314238

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

~~The Debtor is a [corporation, partnership, etc.]. Since [insert year operations commenced], the Debtor has been in the business of [describe the Debtor's business].~~

The Debtor is a California corporation formed in 2005 and currently operates three ACE Hardware-branded stores in San Rafael, Santa Rosa and Pacifica, California. This bankruptcy case was commenced because the Debtor's obligations were greater than its ability to pay due in large part to the Debtor's unsuccessful effort to expand its operations through a wholly-owned, non-debtor affiliate, DD Hardware LLC, which was formed in 2021 to open and operate an additional ACE Hardware Store location in Sunnyvale, California.

The Debtor guaranteed an SBA Loan that DD Hardware LLC obtained from Fremont Bank in July 2022 to fund the expansion as well as other obligations of its affiliate. The Fremont Bank Loan was also guaranteed by the Debtor's principals, Damon Pham and David Harrison, which guaranty was secured by their residence. Shortly after filing this bankruptcy case in June 2026, Messrs. Pham and Harrison sold their residence which paid off the Fremont Bank Loan.

Because the Sunnyvale store was unprofitable, the Debtor was forced to close its affiliate and liquidate the assets of DD Hardware LLC in August 2025; the Debtor continues to operate the three original locations. During this time frame, the Debtor also obtained several bridge loans with high interest rates to fund its operations. The high cost of these loans had a negative impact on the Debtor's available free cash flow. Interest payments on these high-cost loans created a constant need for additional funding to operate the business, but the Debtor could not generate sufficient revenue to cover its operating expenses while also maintaining its debt service obligations.

The Debtor's payment of operating expenses and debt service also caused the Debtor to become significantly in arrears on various trust fund obligations including state sales taxes and federal and state payroll taxes. In March 2026, the California Department of Tax and Fee Administration ("CDTFA") notified the Debtor that it intended to levy on the Debtor's bank accounts unless very large payments were made on account of unpaid sales taxes. While the Debtor entered into a payment plan with the CDTFA and made some payments, the Debtor was unable to make the additional plan payments. As a result, the CDTFA served the Debtor with a notice of levy which notified the Debtor of CDTFA's intent to levy on the Debtor's bank account on or about June 8, 2026, which necessitated the commencement of this Subchapter V Case.

As a result of the CDTFA's notice of levy, the anticipated costs of litigation, expenses incurred and guaranteed obligations related to the expansion, the Debtor commenced this case under subchapter V of

chapter 11 to stabilize its financial situation, and right-size its operations, to be able to emerge from bankruptcy with the goal of continuing its operations on a solid financial footing in the future.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such creditors and equity interest holders would receive in a ~~chapter 7~~hypothetical chapter 7 liquidation. ~~A liquidation analysis is attached to the Plan as Exhibit A.~~ The Debtor's liquidation analysis is attached hereto as Exhibit A and incorporated herein by this reference

The Debtor's liquidation analysis shows that unsecured creditors would receive $~~-~~50,361.78 if the assets were liquidated in Chapter 7~~.~~, which would result in approximately a 2% distribution to unsecured creditors.

### C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also show that it will have enough cash to make the required Plan payments and operate the ~~debtor's business, if contemplated by the Plan.~~Debtor's business without the need for further reorganization.

The Debtor~~ has provided projected financial information / feasibility analysis as Exhibit B.~~'s projected financial information / feasibility analysis is attached hereto as Exhibit B. and incorporated herein by this reference. ~~Debtor's projected effective date feasibility analysis is set forth in Exhibit C.~~The Debtor's projected effective date feasibility analysis is attached hereto as Exhibit C and incorporated herein by this reference.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) of the Code ~~(3 to 5 years)~~(60 months) of $~~-~~63,654.50.

The final Plan ~~payment is expected to be paid on , which is anticipated to be months after the effective date.~~payments are expected to be paid on or before December 1, 2031, which is anticipated to be 60 months after the effective date.

**NOTWITHSTANDING THE FOREGOING, THE DEBTOR SHALL BE ENTITLED, AT ITS ELECTION, TO PREPAY ANY AND ALL ALLOWED CLAIMS UNDER THE PLAN WITHOUT PENALTY.**

You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.

## Article 1: Summary

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of ~~[insert the name of the Debtor]~~D &D Venture Group, Inc] (the "Debtor") from

~~[Specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].~~cash flow from operations and future income.

This Plan provides for: ~~[ ]~~1 classes of priority claims;

~~[ ]~~2 classes of secured claims;

~~[ ]~~2 classes of non-priority unsecured claims; and

~~[ ]~~1 classes of equity security holders.

~~Non-priority unsecured creditors~~Non-priority and unsubordinated unsecured creditors in Class 3 (A) holding allowed claims will receive distributions, which the proponent of this Plan ~~[choose one] has valued at approximately~~has valued at approximately ~~-~~10.2 cents on the dollar ~~[or] is unable to estimate the distribution to creditors~~, consistent with the liquidation analysis ~~in~~set forth on Exhibit A, which is incorporated herein by this reference, and projected disposable income ~~in~~set forth on Exhibit B, which is incorporated herein by this reference. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## Article 2: Classification of Claims and Interests

### 2.01 Class 1

All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) of the Code, and priority tax claims under § 507(a)(8) of the Code).

~~[Add classes of priority claims, if applicable]~~

### 2.02 Class 2

(A) The claim of ~~[ ]~~Summit Bank, to the extent allowed as a secured claim under § 506 of the Code.

~~[Add other classes of secured creditors (if any) by using Class 2(A), Class 2(B), etc. Note: § 1129(a)(9)(D) of the Code provides that a secured tax claim which would otherwise meet the description of a priority tax claim under § 507(a)(8) of the Code is to be paid in the same manner and over the same period as prescribed in § 507(a)(8) of the Code.]~~

(B) The claim of BHG, LLC to the extent allowed as a secured claim under § 506 of the Code

### 2.03 Class 3

(A) All non-priority unsecured claims allowed under § 502 of the Code.

~~[Add other classes of unsecured claims, if any.]~~

(B) All non-priority unsecured claims allowed under § 502 of the Code of insiders David Harrison and Damon Pham, including any claim of subrogation or contribution as a result of the payment of the Fremont Bank Loan.

### 2.04 Class 4

Equity interests of the Debtor. ~~[If the Debtor is an individual, change this heading to The interests of the individual Debtor in property of the estate.]~~

## Article 3: Treatment of Administrative Expense Claims, and Priority Tax Claims

### 3.01 Unclassified claims

Under § 1123(a)(1) of the Code, administrative expense claims, and priority tax claims are not classified.

### 3.02 Administrative expense claims

~~List each holder of an administrative expense claim allowed under § 503 of the Code that will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.~~

~~Or~~

~~List each holder of an administrative expense claim allowed under § 503 of the Code that will be paid [specify terms of treatment, including the form, amount, and timing of distribution, consistent with § 1191(e) of the Code.]~~

~~[Note: Include any fees and costs owed to the Subchapter V Trustee for pre-confirmation services]~~

Administrative claimants Fox Rothschild LLP, Mac Restructuring Advisors, LLC and the Subchapter V Trustee, Christopher Hayes, will be paid on their allowed claims in full and in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor, on the later of (a) the Effective Date of the Plan, or (b) the date on which such Claim is Allowed by a final non-appealable order, unless otherwise agreed in writing by the Debtor and the holder of such administrative expense claims.

Any payments of allowed administrative expenses to Fox Rothschild LLP or Mac Restructuring Advisors, LLC, shall be net of any remaining pre-petition retainers held by those administrative claimants. Fox Rothschild holds a pre-petition retainer of $53,741.50 and Mac Restructuring Advisors holds a pre-petition retainer of $4,965.00. The net fees and expenses incurred by Fox Rothschild as of August 31, 2026, are approximately $150,738.17. Estimated Fees for Mac Restructuring and the Subchapter V Trustee are $25,000.00 each.

### 3.03 Priority tax claims

~~List each holder of a priority tax claim that will be paid [Specify terms of treatment consistent with § 1129(a)(9)(C) of the Code].~~

The Internal Revenue Service shall receive payment of its allowed $158,756.03 priority tax claim in 54 equal monthly installments of principal and interest at the applicable rate, pursuant to § 511 of the Code which the Debtor estimates to be 10%. The payments shall commence in January 2027. The final payment shall be not later than December 1, 2030.

The California Department of Tax and Fee Administration ("CDTFA") shall receive full payment of its priority tax claims of $470,549.67 in 54 equal monthly installments of principal interest at the applicable rate, pursuant to § 511 of the Code, which the Debtor estimates to be 10%. The payments shall commence in January 2027. The final payment shall be not later than December 1, 2030.

The California Employment Development Department shall receive payment of its allowed $408.10 priority tax claim in cash on the Effective Date.

The California Franchise Tax Board shall receive payment of its allowed $851.24 priority tax claim in cash on the Effective Date.

## Article 4: Treatment of Claims and Interests Under the Plan

**4.01 Claims and interests shall be treated as follows under this Plan:**

**Class 1 – Priority claims excluding those in Article 3**

~~Impaired~~ Unimpaired

~~[Insert treatment of priority claims in this Class, including the form, amount and timing of distribution, if any.~~

~~For example: "Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan, or the date on which such claim is allowed by a final non-appealable order. Except: ."]~~

~~[Add classes of priority claims if applicable]~~

Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the Effective Date of this Plan, or the date on which such claim is allowed by a final non-appealable order. All pre-petition wage priority claims have been paid pursuant to previous orders of this court authorizing payment of those claims. The Debtor is not aware of any further priority claims in this class.

~~**Class 2 – Secured claim of [Insert name of secured creditor]**~~

**Class 2 (A) and (B) – Secured claims of Summit Bank and Bankers Health Group, LLC**

Impaired ~~Unimpaired~~

~~[Insert treatment of secured claim in this Class, including the form, amount and timing of distribution, if any.]~~

~~[Add classes of secured claims if applicable]~~

(A) Summit Bank ("Summit") shall receive payment on its approximate $570,000.00 secured claim (Scheduled Claim) as follows: Summit shall retain its lien against its collateral and receive deferred cash payments of at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of Summit's interest in the estate's interest in its collateral. The Debtor will make an initial payment to Summit of $25,000.00 on the Effective Date. Thereafter the Debtor shall pay Summit in 60 monthly installments of $11,379.54 of principal and interest at the rate of interest which the Court will approve under 11 U.S.C. §1129(b)(2)(A)(i)(II), which the Debtor estimates will be 9.25%.

(B) Bankers Health Group, LLC ("BHG") shall receive payment on its $57,874.13 secured claim (filed Claim No. 17) as follows: BHG shall retain its lien against its collateral and receive deferred cash payments of at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of BHG's interest in the estate's interest in its collateral. The Debtor shall pay BHG in 60 monthly installments of $1,194.36 of principal and interest at the rate of interest which the court will approve under 11 U.S.C. §1129(b)(2)(A)(i)(II), which Debtor estimates will be 8.75% per annum.

~~**Class 3 – Non-priority unsecured claims**~~

**Class 3 (A) (B) and (C) – Non-priority unsecured claims**

Impaired ~~Unimpaired~~

~~[Insert treatment of unsecured creditors in this Class, including the form, amount and timing of distribution, if any.]~~

~~[Add administrative convenience class if applicable]~~

~~[Note: Include a schedule of all claimants provided for in this class, along with the estimated claim amount, estimated total dividend amount, and estimated distribution for each dividend payment.]~~

Class 3(A) Treatment—Holders of unsubordinated unsecured claims shall receive a pro rata share of the sum of $140,000 over a 5-year term of this Subchapter V plan after payment of allowed administrative expense claims (see ¶ 3.02 above) and allowed priority claims (see ¶ 3.03 above).

The total amount to be paid to Class 3 (A) Creditors is $140,000 in the amounts specified in Exhibit D, which is attached hereto and incorporated by this reference. This amount exceeds the net disposable income of the Debtor. Payments to Class 3(A) will be paid quarterly and will commence in year 3 of the Plan and continue through the end of the 5-year term.

Class 3 (B) Treatment—Holders of subordinated unsecured claims shall receive no distribution until all other unsecured claims are paid in full.

**Class 4 – Equity security holders of the Debtor**

~~Impaired~~ Unimpaired

~~[Insert treatment of equity security holders in this Class, including the form, amount and timing of distribution, if any.]~~

The equity security holders of the Debtor shall retain their equity in the Debtor without modification or impairment.

## Article 5: Allowance and Disallowance of Claims

**5.01 Disputed claim**

A disputed claim is a claim that has not been allowed or disallowed [by a final non--appealable order], and as to which either:

(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02 Disputed claim reserve**

Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be ~~[select one] returned to Debtor or~~returned to Debtor or

distributed pro-rata among allowed claims ~~in this class.~~in accordance with this Plan.

**5.03 Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed ~~[by a final non-appealable order].~~by a final non-appealable order.

### 5.04 Settlement of disputed claims

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

### 6.01 Assumed executory contracts and unexpired leases

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:

~~[List assumed or, if applicable, assigned executory contracts and unexpired leases along with the estimated amount to cure any default as required by section 365(b)(1)(A) of the Code.]~~

~~[Form template table with blank Counter Party / Description / Estimated Cure Amount / Installment Amount / Number of Installments columns]~~

**Counter Party / Description / Estimated Cure Amount:**

- ACE Hardware Corporation – 3 Franchise Agreements – $411,580.00
- Adalan Properties LLC – Lease of Warehouse in Hercules, CA – $0
- Azzopardi Family Partnership & Lynn Bacon Surviving Trustors Trust – Lease of Pacifica Store – $0
- Carrington & Codding – Lease of Santa Rosa Store – $0
- Pierce Co Properties – Lease of San Rafael Store – $0
- Roger Pierce, Trustee – Lease of San Rafael Storage – $0

As a cure payment for the three Ace Hardware Franchise Agreements, the Debtor will transfer to Ace Hardware on the Effective Date a sufficient number of shares of Ace Hardware Stock that it holds for each of its three locations, totaling approximately 4,214 shares, with a total par value as of March 6, 2026 of approximately $422,300.00. The estimated number of shares to be transferred on the Effective Date is 4,116.

### 6.02 Rejected executory contracts and unexpired leases

(a) The Debtor rejects the following executory contracts and unexpired leases as of the effective date:

~~[Form template table with blank Counter Party / Description / Estimated Unsecured Claim columns]~~

**Counter Party / Description / Estimated Unsecured Claim:**

- SCG Marina Bay Business Center, LLC – Richmond Warehouse – $Unknown

(b) The Debtor shall be deemed to reject all executory contracts and unexpired leases that are not specifically assumed in section 6.01(a) of this Plan.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than be

~~[select one] [] 30 days or []~~ 30 days after the date of the order confirming this Plan.

~~[Check the box for the applicable deadline for filing a proof of claim arising from the rejection of an executory contract or unexpired lease, and if no box is selected or the selection is blank, the deadline shall be 30 days after the date of the order confirming this Plan.]~~

## Article 7: Means for Implementation of the Plan

~~[Insert here provisions regarding how the plan will be implemented as required under § 1123(a)(5) of the Code. For example, provisions may include those that set out how the plan will be funded, including any claims reserve to be established in connection with the plan, as well as who will be serving as directors, officers or voting trustees of the reorganized Debtor.]~~

This Plan will be funded through the Debtor's post-Effective Date disposable income from the operation of the Debtor's three remaining Ace Hardware retail stores. The Debtor's income and expense projections for the 5-years following the Effective Date of the Plan are attached hereto as Exhibit B. The Debtor will establish a claims reserve for all disputed claims, litigate objections to claims of holders of disputed claims, and prosecute avoidance actions, if any. Damon Pham and David Harrison shall continue serving as the Officers and Directors of the Reorganized Debtor.

## Article 8: General Provisions

### 8.01 Definitions and rules of construction

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

[Insert additional definitions if necessary].

### 8.02 Effective date

~~[Select one]~~

The effective date of this Plan is the first business day following the date that is 14 days after the entry of the final confirmation order, except that the requirement of finality may be waived by the Debtor. If a stay of the confirmation order is in effect on that date, the Debtor may elect to treat the effective date as the first business day after the date on which the stay expires or is otherwise terminated.

~~The effective date of this Plan is [describe].~~The effective date of this Plan is: January 1, 2027.

### 8.03 Vesting at Confirmation

Property of the estate shall: ~~[select one]~~

revest in the Debtor upon confirmation of the Plan.

not revest in the Debtor at confirmation, but shall be delayed and thereafter vest in the Debtor at the earlier of: (a) completion of all payments due under the Plan; (b) dismissal; (c) discharge; or (d) closing of the case.

~~[describe]:~~

Where plan confirmation is nonconsensual under § 1191(b), upon conversion of the case to Ch. 7, the property of the reorganized debtor, or of any liquidating or litigation trust, or of any other successor to the bankruptcy estate under the confirmed plan, that has not been distributed under the plan, will be vested in the Ch. 7 estate.

**8.04 Plan Disbursements**

After confirmation, all payments due to creditors under the Plan shall be disbursed by the: ~~[select one]~~

~~Debtor.~~Debtor.

~~Subchapter V Trustee.~~

~~[describe]:~~

Notwithstanding § 1194(b) of the Code, and unless otherwise ordered by the Court, ~~Debtor~~the Debtor shall be authorized to make all payments due to creditors under the Plan if such election is made in this section of the Plan. Plan Disbursements shall commence on January 1, 2027.

If required to make distributions to creditors under the Plan or perform any post-confirmation services, the Subchapter V Trustee shall be entitled to compensation consistent with the hourly rate set forth in the Verified Statement of Subchapter V Trustee filed in the Case and reimbursement for all actual and necessary expenses incurred. Post-confirmation compensation due and payable to the Subchapter V Trustee may reduce payments to general unsecured creditors.

**8.05 Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**8.06 Binding effect**

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

**8.07 Captions**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.08 Controlling effect**

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California

govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.~~]~~

**8.9 Corporate governance**

Confirmation of the Plan shall be deemed to prohibit the issuance by the Reorganized Debtor of nonvoting securities to the extent required under § 1123(a)(6) of the Code. ~~[Include for corporate debtors only]~~

**8.10 Payments**

All payments to be made under the Plan for professional services, costs, or expenses in connection with the case or the Plan as required by §§ 330 and 331 of the Code shall be subject to the approval of the court.

**8.11 Officers and Directors**

The officers and directors of the Debtor shall remain in their roles post-confirmation, except . [Include for corporate debtors only].

**8.12 Insider Retention**

The insiders who were employed or retained by the Debtor shall remain in their roles post-confirmation, at the same or comparable compensation, except . [Include for corporate debtors only].

**8.13 Defaults and Remedies**

Failure to pay any amount due under this Plan within 20 days of the due date shall constitute a Default. Upon the occurrence of a Default, any affected creditor may serve a Notice of Default providing a 15-day cure period.

Absent a cure within that period, the creditor may present a Motion seeking appropriate relief from the Court, which may but need not include conversion of the case to one under Chapter 7 of the Code.

**8.14 Retention of Jurisdiction**

The Court may exercise jurisdiction over proceedings concerning: (a) whether Debtor is in Material Default of any Plan obligation; (b) whether the time for performing any Plan obligation should be extended; (c) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this Court; (d) whether the case should be dismissed or converted to one under Chapter 7; (e) any objections to claims; (f) compromises of controversies under Federal Rule of Bankruptcy Procedure 9019; (g) compensation of professionals; and (h) other questions regarding the interpretation and enforcement of the Plan.

**8.15 Deadline for Election Under 11 U.S.C. § 1111(b)**

Any creditor that wishes to make an election under § 1111(b)(2) of the Code shall do so no later than 10 days following the filing of the Plan.

## Article 9: Discharge

[Select one]

[][X] Debtor is entitled to a discharge pursuant to § 1141(d)(3) of the Code.

[] Debtor is not entitled to a discharge pursuant to § 1141(d)(3) of the Code.

[Select one]

[] Discharge if the Debtor is an individual under Subchapter V

If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt excepted from discharge under § 523(a) of the Code, except as provided in Federal Rule of Bankruptcy Procedure 4007(c). Pursuant to § 1181(a) of the Code, § 1141(d)(5) of the Code does not apply.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

~~i. on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code; or~~

~~ii. excepted from discharge under § 523(a) of the Code, except as provided in Federal Rule of Bankruptcy Procedure 4007(c).~~

~~[] Discharge if the Debtor is a partnership under Subchapter V~~

~~If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code.~~

~~If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code.~~

~~[]~~[X] Discharge if the Debtor is a corporate entity under Subchapter V

If the Debtor's Plan is confirmed under § 1191(a) of the Code, on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt to the extent provided in § 1141(d)(6) of the Code.

If the Debtor's Plan is confirmed under § 1191(b) of the Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the Plan's term, which could range from 3-5 years, pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt on which the last payment is due after the conclusion of the Plan's term, which could range from 3-5 years pursuant to § 1191(c)(2) of the Code, or as otherwise provided in § 1192 of the Code.

## Article 10: Other Provisions

[Insert other provisions, as applicable.]

## Signatures

Respectfully submitted,

D & D Venture Group, Inc.

Damon Pham

[Signature of the Debtor] ~~[Printed Name]~~Damon Pham

Its: Responsible Individual

~~[Signature of the Co-Debtor] [Printed Name]~~

~~[Signature of the Attorney for the Debtor]     [Printed Name]~~
/s/ Edward Tredinnick     Edward Tredinnick
Keith C. Owens

## Article 11: Attorney Certification

I am legal counsel for the Debtor in the above-captioned case and hereby certify that the foregoing plan is a true and correct copy of the Plan of Reorganization for Small Business Debtor Under Chapter 11, Subchapter V promulgated by the Northern District of California on ~~_____, 2024~~February 3, 2026 (the "Standard-Form Plan") and

~~[Select one]~~

~~[]~~ There are no alterations or modifications to any provision of the Standard-Form Plan;

~~[]~~[X] Attached hereto as Exhibit ~~[ ]~~E is a redline of Debtor's Plan identifying all alterations or modifications made to any provision of the Standard-Form Plan; or

~~[]~~ Below are all alterations or modifications made to any provision of the Standard-Form Plan:

[Insert the article number, page number, and general subject matter for each alternation or modification, as applicable]

I declare that the foregoing is true and correct. Executed this ~~___ day of ___, 20__.~~2d day of October, 2026.

~~[Signature of the Attorney for the Debtor]     [Printed Name]~~
/s/ Edward Tredinnick     Edward Tredinnick
Keith C. Owens

## Exhibit A: Liquidation Analysis

~~[Standard-Form Plan template tables: Real Property table, Personal Property (Business cases only) table, Personal Property (Individual cases only) table, Net Proceeds / Recovery from Preferences / Chapter 7 Administrative Claims / Chapter 11 Administrative Claims / Priority Claims / Chapter 7 Trustee Fees / Net Funds Available for Distribution to Unsecured Creditors tables, Estimated Amount of Unsecured Claims / Percent Distribution tables]~~

Debtor's Liquidation Analysis as of July 31, 2026

Total Assets (Book Value): $4,219,504.91; Total Assets (Liquidation Value): $2,200,566.72

Less Chapter 7 Administrative Expenses: $667,617.00

Less Chapter 11 Administrative Expenses: $225,000.00

Net Available for Debtor's Creditors: $1,307,949.71

Secured Creditors Recovery: $627,874.13

Priority Claims: $629,713.80

Net Available for General Unsecured Creditors: $50,361.78

Total Unsecured Claims: $2,513,262.87

Estimated GUC Recovery: 2.0%

*[Full schedule with line items and notes omitted per Exhibit convention described in Legend]*

## Exhibit B: Disposable Income Analysis / 5-Year Projection Feasibility

~~[Standard-Form Plan template tables: Individual cases (Income / Expenses / Plan Payments / Monthly Disposable Income / Projected Disposable Income) and Business cases (Revenue / Operating Expenses / Plan Payments / Net Operating Income / Available Operating Capital / Projected Disposable Income)]~~

Debtor's 5-Year Plan Feasibility Analysis

Store-by-store projections for Santa Rosa, Pacifica, and San Rafael (2027–2031)

Consolidated Total Sales Year 1: $9,319,420; Year 5: $10,291,309

Net Operating Income after Ace Cash Rebate: Year 1: $308,321; Year 5: $426,288; 5-Year Total: $1,853,406

Total Creditor Payments Before GUC: $1,789,752

Net Disposable Income (5-Year): $63,655

General Unsecured Creditor Payments: $140,000 ($40,000 Year 3; $50,000 Year 4; $50,000 Year 5)

Beginning Cash: $524,270; Ending Cash (Year 5): $447,924

*[Full store-by-store and consolidated tables omitted per Exhibit convention described in Legend]*

## Exhibit C: Effective Date Feasibility Analysis / Effective Date Cash Payments

~~[Standard-Form Plan template tables: Cash on Effective Date / Payments on Effective Date / Net Cash on Effective Date]~~

Debtor's Effective Date Cash Payments

Estimated Cash on Hand as of the Effective Date: $524,269.81

Effective Date Payments: Debtor's Counsel $175,000; Debtor's FA $25,000; Sub V Trustee $25,000; EDD $408.10; FTB $851.24; Payment to Summit Bank $25,000

Total Effective Date Payments: $251,259.34

Balance of Cash on Hand: $273,010.47

*[Full schedule omitted per Exhibit convention described in Legend]*

## NEW — Exhibit D: GUC Claim Recovery

[Entire exhibit is new; not present in Standard-Form Plan]

General Unsecured Creditor Recovery: $140,000.00

Lists all scheduled and filed unsecured claims with claim amounts and plan recovery at 10.2%.

Total Unsecured Claims (GUC column): $1,377,437.74

Total Plan Recovery: $140,000.00 (10.2%)

*[Full creditor-by-creditor table omitted per Exhibit convention described in Legend]*

Docusign Envelope ID: 14D07044-6944-86AA-8078-0A8C55BDF3D1



## NEW — Exhibit E: Redline Plan Comparison

[Entire exhibit is new; not present in Standard-Form Plan]

Placeholder page for this redline document.

*** * * END OF REDLINE * * ***



Case: 26-30496 Doc# 74 Filed: 10/02/26 Entered: 10/02/26 15:54:23 Page 39 of 39